David T. Biderman, Bar No. 101577
DBiderman@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: 415.344.7000
Facsimile:  415.344.7050

Charles C. Sipos, *Pro Hac Vice*
CSipos@perkinscoie.com
Lauren Watts Staniar, *Pro Hac Vice*
LStaniar@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile:  206.359.9000

Attorneys for Defendant Campbell
Soup Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KYLE BANTA YOSHIDA, ANTHONY MANCUSO, and ASHLEY MISTLER, on behalf of themselves, those similarly situated, and the general public; <br><br> Plaintiffs, <br><br> v. <br><br> CAMPBELL SOUP COMPANY, <br><br> Defendant. | Case No. 3:21-cv-09458-JD <br><br> DEFENDANT CAMPBELL SOUP COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS <br><br> [Fed. R. Civ. P. 12(b)(1) & 12(b)(6)] <br><br> Date:  March 24, 2022 <br> Time:  10:00 a.m. PT <br> Courtroom:  Courtroom 11, 19th Floor <br> Judge:  Hon. James Donato |

1

2

## **NOTICE OF MOTION & MOTION**

3       TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

4       PLEASE TAKE NOTICE that on March 24, 2022, at 10:00 a.m., or as soon thereafter as

5 the matter may be heard in the courtroom of the Honorable James Donato, located at 450 Golden

6 Gate Avenue, San Francisco, CA 94102, Courtroom 11 – 19th Floor, or in Judge Donato's virtual

7 courtroom, Defendant Campbell Soup Company will and hereby does move pursuant to Federal

8 Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiffs' Complaint ("Compl.").

9       This motion is made on the following grounds:

10       1.     Plaintiffs have not plausibly alleged that a "reasonable consumer" would be

11 deceived by the labels of Campbell Soup Company's V8 Juices at issue in the case.

12       2.     Plaintiffs' claims are expressly preempted by the Nutrition Labeling and Education

13 Act of 1990, 21 U.S.C. § 343-1, *et seq*.

14       3.     Plaintiffs are not entitled to seek an injunction because they lack Article III standing.

15 They also are not entitled to seek equitable monetary relief because they have failed to allege they

16 lack an adequate remedy at law as required by *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834

17 (9th Cir. 2020).

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................ 1

II.  FACTUAL BACKGROUND ................................................ 2

    A.   V8 Juices Are in a Category of Foods Recognized as Healthy and Nutritious ................................................................ 2

    B.   Plaintiffs Challenge V8 Juice Labels' Reference To "Nutrition" as an Alleged Implicit Claim that Means "Healthy" ........................ 4

III. STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(A)(3)) .......... 5

IV.  STANDARD OF REVIEW ................................................ 5

V.   ARGUMENT ................................................................ 6

    A.   No Reasonable Consumer Is Misled by the Products Labels .......... 6

    B.   Plaintiffs' Claims Are Preempted .................................... 11

    C.   Plaintiffs Are Not Entitled To Their Requested Equitable Remedies .... 14

        1.   Plaintiffs lack standing to seek injunctive relief. ............... 14

        2.   Plaintiffs' monetary equitable relief should be dismissed for failure to allege lack of an adequate remedy at law. ................ 15

VI.  CONCLUSION ............................................................ 15

1

## TABLE OF AUTHORITIES

2

Page(s)

3

CASES

4

*Ashcroft v. Iqbal*,
5
556 U.S. 662 (2009) ............................................................................................... 6

6

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019)....................................................................... 6, 10
7

*Bell Atl. Corp. v. Twombly*,
8
550 U.S. 544 (2007) ............................................................................................... 6

9

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
475 F. App'x 113 (9th Cir. 2015) ...................................................................... 6
10

11

*Cheslow v. Ghirardelli Chocolate Co.*,
472 F. Supp. 3d 686 (N.D. Cal. 2020) ............................................................. 8

12

*Clark v. Perfect Bar, LLC*,
13
816 F. App'x 141 (9th Cir. 2020) ............................................................... 12, 13

14

*Clark v. Perfect Bar, LLC*,
2018 WL 7048788 (N.D. Cal. Dec. 21, 2018) ....................................... 7, 8, 12
15

16

*Davidson v. Kimberly-Clark Corp.*,
873 F.3d 1103 (9th Cir. 2017),
17
*as amended on denial of reh'g en banc*, 889 F.3d 956 (9th Cir. 2018) ................. 14

18

*Gitson v. Trader Joe's Co.*,
2013 WL 5513711 (N.D. Cal. Oct. 4, 2013)................................................... 9
19

20

*Hadley v. Kellogg Sales Co.*,
273 F. Supp. 3d 1052 (N.D. Cal. 2017) ..................................................... 8, 13

21

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
2019 WL 2515919 (N.D. Cal. June 18, 2019) ............................................. 14
22

23

*In re: 5-Hour Mktg. & Sales Prac. Litig.*,
2018 WL 11354864 (C.D. Cal. Jan. 24, 2018) ............................................. 9

24

*In re Coca-Cola Products Mktg. & Sales Pracs. Litig. (No. II)*,
25
--- F. App'x ----, 2021 WL 3878654 (9th Cir. Aug. 31, 2021)....................... 14, 15

26

*In re MacBook Keyboard Litig.*,
2020 WL 6047253 (N.D. Cal. Oct. 13, 2020).............................................. 15
27

28

*Johnson v. Trumpet Behav. Health, LLC*,
2022 WL 74163 (N.D. Cal. Jan. 7, 2022) .................................................... 15

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018)................................................................................................ 6

*Krommenhock v. Post Foods*,
  255 F. Supp. 3d 938 (N.D. Cal. 2017) ................................................................................ 8

*Milan v. Clif Bar LLC*,
  Complaint, No. 18-cv-2354 (Apr. 19, 2018)....................................................................... 8

*Milan v. Clif Bar LLC*,
  2019 WL 3934918 (N.D. Cal. Aug. 20, 2019).................................................................... 8

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020)............................................................................................. 6

*Moore v. Trader Joe's*,
  4 F.4th 874 (9th Cir. 2021)................................................................................... 6, 7, 9, 10

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020)............................................................................................. 15

*TransUnion v. Ramirez*,
  141 S. Ct. 2190 (2021)....................................................................................................... 14

*Truxel v. General Mills Sales, Inc.*,
  2019 WL 3940956 (N.D. Cal. Aug. 13, 2019)........................................................ 7, 8, 11

*Turek v. Gen. Mills, Inc.*,
  662 F.3d 423 (7th Cir. 2011).............................................................................................. 11

*Werdebaugh v. Blue Diamond Growers*,
  2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) .................................................................. 15

*Williams v. Cal.*,
  764 F.3d 1002 (9th Cir. 2014).............................................................................................. 6

*Yu v. Dr Pepper Snapple Grp., Inc.*,
  2020 WL 5910071 (N.D. Cal. Oct. 6, 2020)...................................................................... 11

*Zabak v. Kellogg Sales Co.*,
  2020 WL 6381987 (S.D. Cal. Oct. 29, 2020) ................................................................... 15

**STATUTES**

21 U.S.C. § 343-1(a)(5).............................................................................................................. 11

21 U.S.C. § 343(r).......................................................................................................................... 11

# TABLE OF AUTHORITIES
(continued)

Page(s)

Cal. Bus. & Prof. Code § 17200 ................................................................. 5

Cal. Bus. & Prof. Code § 17500 ................................................................. 5

Cal. Civ. Code § 1750 ................................................................................. 5

**RULES**

Fed. R. Civ. P. 12(b)(1) .............................................................................. 6

Fed. R. Civ. P. 23(b)(2) .............................................................................. 5

Fed. R. Civ. P. 23(b)(3) .............................................................................. 5

**REGULATIONS**

21 C.F.R. § 100.1(c)(4) .............................................................................. 11

21 C.F.R. § 101.9(c)(6)(iii) ........................................................................ 2

21 C.F.R. § 101.14(a)(4) ............................................................................ 12

21 C.F.R. § 101.60(c) ................................................................................. 13

21 C.F.R. § 101.65(d) ................................................................... 3, 10, 12, 13

58 Fed. Reg. 2,478 (Jan. 6, 1993) .............................................................. 12

59 Fed. Reg. 24, 232-01 (May 10, 1994) .................................................. 12

81 Fed. Reg. 33,742-01 (May 27, 2016) .................................................... 2

**OTHER AUTHORITIES**

Collins Dictionary, available at: https://www.collinsdictionary.com/us/dictionary
/english/nutrition ................................................................................. 10

Dictionary.com, https://www.dictionary.com/browse/nutrition .................. 10

H.R. Rep. No. 101-538 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 3336 (1990
WL 259223) ......................................................................................... 11

Heyman, M.B., et al., "Fruit Juice in Infants, Children, and Adolescents: Current
Recommendations." Pediatrics Vol. 139, No. 6 (June 2017) ................. 5

# I.    INTRODUCTION

Plaintiffs challenge certain Campbell Soup Company's ("Campbell") V8® Juices that are made from the juice of fruits and vegetables—taken from as much as three pounds of produce per bottle. The V8 Juices contain beneficial nutrients like Vitamins A and C, and thus are foods the Food and Drug Administration ("FDA") expressly recognizes as "healthy," and whose consumption the United States Department of Agriculture ("USDA") encourages. There is no added sugar in any of these products; their sweetness is derived from sugars naturally present in fruits and vegetables.

Plaintiffs' Complaint nonetheless alleges that the statement "Boost Your Morning Nutrition" on the products' labels is deceptive, contending this suggests the products are "healthy," a message Plaintiffs deem incompatible with naturally occurring sugars in fruits and vegetables. This theory is implausible in multiple ways. It is contradicted by the labels' repeated and truthful disclosures about the products' sugar content. It is discredited by the placement of the challenged claim on the products' labels, which show that this "Boost Your Morning Nutrition" claim appears immediately adjacent to a listing of undisputed nutritional facts about the foods. And it is wrong as a matter of FDA regulations and nutritional guidance, which *encourage* consumers to drink juice even if it contains naturally occurring sugar so long as it meets certain nutritional criteria—criteria the V8 Juices all meet and exceed. Although the Complaint contains scores of allegations concerning foods with *added* sugar (drawn principally from complaints in different cases filed by the same plaintiff's counsel), it does not show that consuming fruit and vegetable juice is "unhealthy."

These failings doom the Complaint under the governing "reasonable consumer" standard. Dismissals of similar complaints by other Northern District judges confirm the Complaint's incurable defects. These cases expressly refute the plausibility of Plaintiffs' theory of deception by explaining that labels that plainly and repeatedly disclose a food's sugar content—as the V8 Juice labels do—give reasonable consumers all the information they need to decide whether a food is "healthy" enough to incorporate into their diet. The only meaningful difference between those cases and this one is that here the foods contain no *added sugar* whatsoever. So, Plaintiffs' theory of

1  deception is even weaker than in these prior cases that were nonetheless dismissed.

2      The Complaint is also expressly preempted under the Nutrition Labeling and Education Act

3  ("NLEA"). Plaintiffs' theory of deception, alleged repeatedly, is that they interpreted the V8 Juice

4  labels to communicate a message that the products are "healthy." Yet precisely because the V8

5  Juices contain significant amounts of beneficial nutrients, on point FDA regulations expressly *allow*

6  the products to be labeled "healthy." As the Ninth Circuit recently held, NLEA preemption bars

7  plaintiffs from attempting to impose liability for food labels that communicate products are

8  "healthy" when the products are, under FDA regulations, "healthy."

9      For all these reasons, the Complaint should be dismissed with prejudice.

10                          **II.      FACTUAL BACKGROUND**

11    **A.     V8 Juices Are in a Category of Foods Recognized as Healthy and Nutritious**

12      The challenged products in this case are certain varieties of Campbell V8 juices ("V8

13  Juices"), foods made from fruits and vegetables including carrots, sweet potatoes, blueberries,

14  apples, spinach, and mango. *See* Compl. ¶ 1, n.1; *see also* App'x 1 (Dkt. No 1-1). Because sugar

15  is naturally present in fruits and vegetables, the V8 Juices contain sugar, as the products' labels

16  repeatedly disclose. *See* Request for Judicial Notice ("RJN") Ex. A. "Total Sugar" content is listed

17  in the Nutrition Facts panel as required by FDA regulations, the products' sugar-containing fruit

18  and vegetable ingredients are identified, and the labels all bear a "No Sugar Added" claim, along

19  with a "Lower Sugar" claim for certain varieties, consistent with their nutritional profiles. *Id*. This

20  "No Sugar Added" language truthfully reflects the fact that no added sugar is present in V8 Juices.

21  *Id.* This fact is further corroborated by the labels all stating they "Include[] 0g Added Sugar" and

22  thus contribute 0% to the FDA's Recommended Daily Intake ("RDI") of 50g for added sugar. *Id.*;

23  *see also* 21 C.F.R. § 101.9(c)(6)(iii). None of these facts are challenged in the Complaint.

24      FDA's food labeling requirements were recently the subject of a significant regulatory

25  overhaul in which FDA amended the requirements pertaining to sugar. *See* Food & Drug Admin.,

26  Food Labeling: Revision of the Nutrition and Supplement Facts Labeling, 81 Fed. Reg. 33,742-01

27  (May 27, 2016). As part of that effort, the agency set a 50g RDI only for *added* sugar—sugars

28  specifically added to a food as a distinct ingredient. FDA expressly declined to set a daily upper

1   limit for naturally occurring sugar like that found in fruit and vegetable juices and excluded these

2   foods from the definition of "added sugar" altogether. *See id.* at 33826–34.

3       This choice was deliberate and based on science, with the FDA concluding that juices with

4   sugar "contribute calories from sugars *as well as nutrients*." *Id.* at 33,833 (emphasis added). It noted

5   juice consumption should be encouraged and excluded fruit and vegetable juices from the definition

6   of "added sugar" for that reason: "[T]he USDA Food Patterns include 100 percent fruit juices in

7   the fruit group, and the DGA has recommended increased consumption of fruits for many years. It

8   was not our intent to include the sugars from 100 percent fruit and vegetable juices in the definition

9   of added sugars in the proposed rule." *Id.* Thus the 2015 DGA, a source relied on in the Complaint,

10  Compl. ¶ 72 n.61, encourages consumption of fruit and vegetable juice for nutritional benefits:

11  "When choosing beverages, both the calories *and nutrients* they may provide are important

12  considerations. Beverages that are calorie-free—especially water—or *that contribute beneficial*

13  *nutrients*, such as fat-free and low-fat milk *and 100% juice*, should be the primary beverages

14  consumed." RJN Ex. B, at 080 (USDA, 2015-20 DGA (8th Ed.) (Dec. 2015) (emphasis added)).

15      Because of their nutritional qualities, each of the V8 Juices may be labeled "healthy" under

16  FDA regulations, a term that the FDA allows so long as the food meets certain nutritional criteria.

17  *See* 21 C.F.R. § 101.65(d)(2)(F). Each of the V8 Juices provides at least 20% of the DRV for

18  Vitamins A and C, twice what the regulations require for "healthy" foods. *See generally* Compl.

19  App'x 1 (each of the challenged V8 Juices provide 20% DRV of Vitamins A and C per serving);

20  21 C.F.R. § 101.65(d)(2)(i)(F) (foods labeled "healthy" to have "at least 10% RDI or the DRV" of

21  Vitamins A or C). FDA prohibits foods from being labeled "healthy" if they contain certain

22  amounts of disqualifying nutrients (fat, saturated fat, and cholesterol); V8 Juices contain none of

23  these nutrients. Further, they are very low sodium per serving (well below the 480 mg disqualifying

24  threshold). App'x 1; 21 C.F.R. § 101.65(d)(2)(i)(F). Put more simply, each of the V8 Juices have

25  twice the amount of beneficial vitamins required to be labeled "healthy," and contain virtually none

26  of the nutrients that would disqualify a food from bearing a "healthy" claim.

27

28

1

2

**B.      Plaintiffs Challenge V8 Juice Labels' Reference To "Nutrition" as an Alleged Implicit Claim that Means "Healthy"**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

On the back of the V8 Juice labels is a large graphic immediately adjacent to the statement "Boost Your Morning Nutrition." *See* RJN Ex. A; App'x 1. That graphic depicts a series of unchallenged facts about the V8 Juices' ingredients and nutrients. *Id.* It identifies the specific fruits and vegetables in each juice variety and the considerable amounts of these ingredients used to make the juice, specifies the antioxidant vitamins in each variety (Vitamins A and C), and reflects there is "no sugar added" to the juices. *See* Fig. 1. As noted, none of the labels' factual statements about their sugar content or ingredients are challenged as untrue or misleading by Plaintiffs.



FIGURE 1: EXEMPLAR V8 JUICE LABEL

17

18

19

20

21

22

Plaintiffs allege instead that the statement, "Boost Your Morning Nutrition" is misleading, theorizing that it implies the products are "healthy," which they maintain is inconsistent with the Juices' "sugar content." Compl. ¶ 1. Here, Plaintiffs allege that consumption of sugar generally can contribute to "risk" of a variety of negative health outcomes. *Id* ¶ 1.

23

24

25

26

27

28

But the Complaint does not posit a particular threshold or level at which consuming juice is unhealthy, either by some third-party or the FDA itself—which rejected setting any upper limit for consumption of total sugars. *See supra* § II.A. The closest the Complaint comes is an allegation that children (none of the Plaintiffs are children) under six should consume less than 6 ounces of juice per day and that for those between 7 and 18 years of age, 8 ounces a day is appropriate; 8 ounces is the serving size of each of the contested V8 Juices. *Id.* ¶ 71–72 n.59 (*citing* Heyman,

M.B., et al., "Fruit Juice in Infants, Children, and Adolescents: Current Recommendations." Pediatrics Vol. 139, No. 6 (June 2017)); RJN Ex. C.

Although Plaintiffs further allege that this same article supports the allegation that "adults" should also consume no more than 8 oz. of juice a day, Compl. ¶ 71 n.59, the cited article says nothing of the sort. It contains no recommendation for juice consumption for those over 18, instead merely noting that even as to those between the ages of 7 and 18, the science is conflicting given studies showing positive health outcomes for adolescents who drink juice. *See* RJN Ex. C, at 5.

Plaintiffs nonetheless allege that the "Boost Your Morning Nutrition" claim is misleading. They also allege the name of one of the varieties of V8 Juices, "Healthy Greens," is similarly deceptive. *Id.* ¶¶ 77–78. For both claims, the repeated contention is that the labels communicate that the products are "healthy," a message the Complaint asserts is misleading because they contain more than some unspecified amount of sugar. *Id.* ¶ 1 ("Campbell represents on their labels that the Juice Blends are healthy . . . ."); *id.* ¶ 2 ("Campbell markets the juice blends as healthy."); *id.* ¶¶ 17–18 (alleging impression created by labeling is that the products are "healthy"); *id.* ¶ 78 (same). Each Plaintiff alleges they took this "healthy" message from the labels. *Id.* ¶¶ 85, 88, 91.

The Complaint asserts causes of action for violation of the Cal. Bus. & Prof. Code § 17200 ("UCL"), § 17500 (FAL), Cal. Civ. Code § 1750 ("CLRA"), and breaches of express and implied warranty. Compl. ¶¶ 120–165. Plaintiffs seek certification of a class of California consumers under Fed. R. Civ. P. 23(b)(3) and (b)(2), seeking damages, equitable monetary remedies, and injunctive relief. Compl., Prayer for Relief.

### III.   STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(A)(3))

1.   Whether Plaintiffs have plausibly alleged that the V8 Juice labels would mislead a "reasonable consumer."

2.   Whether Plaintiffs' claims are expressly preempted.

3.   Whether Plaintiffs' requests for injunctive and equitable monetary relief are barred.

### IV.   STANDARD OF REVIEW

"[Rule 12(b)(6) requires that a complaint] . . . contain factual allegations sufficient to 'state a claim to relief that is plausible on its face.'" *Williams v. Cal.*, 764 F.3d 1002, 1007 (9th Cir. 2014)

1  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he court [is not] required to

2  accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

3  unreasonable inferences." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir.

4  2018). Determining whether a complaint states a plausible claim for relief is a "context-specific

5  task that requires the reviewing court to draw on its judicial experience and common sense."

6  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A motion to dismiss under Federal Rule of Civil

7  Procedure 12(b)(1) challenges the Court's subject-matter jurisdiction over the action, including

8  plaintiff's standing. Fed. R. Civ. P. 12(b)(1).

9  ## V.   ARGUMENT

10  ### A.   No Reasonable Consumer Is Misled by the Products Labels

11  The Complaint's UCL, FAL and CLRA claims are subject to review under the "reasonable

12  consumer" standard. *Moore v. Trader Joe's*, 4 F.4th 874, 881 (9th Cir. 2021). As the Ninth Circuit

13  recently clarified, even at Rule 12 satisfying the "reasonable consumer" test is "not a negligible

14  burden." *Id.* To meet it, "Plaintiffs must demonstrate more than a mere possibility that the seller's

15  label might conceivably be misunderstood by some few consumers viewing it in an unreasonable

16  manner. Rather, the reasonable consumer standard requires a probability that a significant portion

17  of the general consuming public or of targeted consumers, acting reasonably in the circumstances,

18  could be misled." *Id.* at 882 (cleaned up).

19  The "reasonable consumer" analysis likewise requires consideration of the entire product

20  label. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020). The dictionary

21  meaning of contested words, FDA guidance bearing on the label's meaning, and information on

22  the label in proximity to challenged claims are all relevant to this analysis. *Becerra v. Dr.*

23  *Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229-30 (9th Cir. 2019) (dictionary meaning of "diet" on

24  diet soda cans informs "reasonable consumer" understanding of that term); *Moore*, 4 F.4th at 881

25  (relying on accuracy of labeling claims as determined by FDA guidelines for "reasonable

26  consumer" analysis); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir.

27  2015) ("reasonable consumer" standard not met where information "adjacent to" challenged

28  language discredited theory of deception).

1    And when interpreting labels, "reasonable consumers" are charged with knowing objective

2    nutritional facts on that product's label. *See Truxel v. General Mills Sales, Inc.*, 2019 WL 3940956,

3    at *4 (N.D. Cal. Aug. 13, 2019) ("[T]he actual ingredients were fully disclosed and it was up to the

4    Plaintiffs, as reasonable consumers, to come to their own conclusions about whether or not the

5    sugar content was healthy for them."); *Clark v. Perfect Bar, LLC*, 2018 WL 7048788, at *1 (N.D.

6    Cal. Dec. 21, 2018) ("The actual ingredients were fully disclosed. Reasonable purchasers could

7    decide for themselves how healthy or not the sugar content would be."). The Complaint does not

8    survive review under the "reasonable consumer" standard here in multiple ways.

9    *First*, the V8 Juice labels are not misleading as to their sugar content, given the obvious,

10   plain, and regulatorily-compliant disclosure of the amount of sugar in the foods. *See* RJN Ex. A;

11   App'x 1. Each of the labels bear a host of factual statements pertaining to sugar, which Plaintiffs

12   never challenge: (1) the "Total Sugar" content is disclosed; (2) the "No Sugar Added" claim is

13   corroborated by the "Include[] 0g Added Sugars" language and 0% Daily Value of added sugar;

14   and (3) the labels also contain prominent displays of the fruits and vegetables contained in the

15   Juices, which are foods that any "reasonable consumer" knows contain sugar. *See id*. This

16   information, in full, must be considered when evaluating the plausibility of Plaintiffs' theory of

17   deception under the "reasonable consumer" standard. *Moore*, 4 F.4th at 883–84. When accounted

18   for, these facts discredit Plaintiffs' theory of deception that a "reasonable consumer" would be

19   deceived about the products' healthfulness by misapprehending their sugar content.

20   Relying on this rationale, two Northern District courts dismissed very similar lawsuits filed

21   by Plaintiffs' counsel that challenged the presence of sugar and purportedly misleading health-

22   related messages on food labels. *Clark*, 2018 WL 7048788, at *1; *Truxel*, 2019 WL 3940956, at

23   *4. In *Clark* and *Truxel*, Judges White and Alsup each dismissed complaints challenging the

24   labeling of cereal and snack bars, where plaintiffs in both cases maintained that alleged health-

25   driven messages were misleading given the foods' added sugar content. *Id.* In both instances, the

26   courts reasoned that the products' labels fully disclosed their sugar content and ingredients, thus

27   giving any "reasonable consumer" more than enough information to make informed choices.

28   *Truxel*, 2019 WL 3940956, at *4; *Clark*, 2018 WL 7048788, at *1; *see also Cheslow v. Ghirardelli*

1  *Chocolate Co.*, 472 F. Supp. 3d 686, 695 (N.D. Cal. 2020) (applying *Truxel* to dismiss on

2  "reasonable consumer" grounds where label contradicted theory of deception).

3       In *Truxel*, the court further explained that the FDA's considered decision to *not* set an upper

4  limit for daily total sugar intake discredited the theory that the challenged cereals were inherently

5  unhealthy. 2019 WL 3940956, at *4 ("We decline to set a DRV [daily recommended value] for

6  sugars or to require the declaration of a percent DV for sugars." (quoting 81 Fed. Reg. 33,742-01,

7  33798)). This analysis has even greater force in this case, as this action does not concern *added*

8  *sugar* at all, since the challenged V8 Juices derive all their sugar from what is naturally occurring

9  in fruits and vegetables and are foods that are treated differently by the FDA as a result.

10       Campbell is aware of this Court's denial of the Rule 12 motion in *Milan v. Clif Bar LLC*,

11  2019 WL 3934918 (N.D. Cal. Aug. 20, 2019), and expects Plaintiffs will respond by pointing to

12  that decision and two other "added sugar" cases litigated by Plaintiffs' counsel, *Hadley v. Kellogg*

13  *Sales Co.*, 273 F.Supp.3d 1052 (N.D. Cal. 2017) and *Krommenhock v. Post Foods*, 255 F.Supp.3d

14  938 (N.D. Cal. 2017). Those cases are distinguishable because they concerned foods with *added*

15  *sugar*, and thus were not subject to the same analysis as are the V8 Juices in this case—products

16  that affirmatively qualify as "healthy" under FDA regulations and do not contain *any* added sugar.

17       Moreover, the lynchpin of those cases was that for "added sugar" the courts treated as

18  plausible for Rule 12 purposes that if over-consumed the products could lead to "excessive sugar

19  consumption" based on the AHA threshold for added sugar consumption. *Milan*, 2019 WL

20  3934918, at *2 (relying on allegations concerning how the "substantial percentage of added sugar

21  in Clif's products can contribute to excessive sugar consumption"); Complaint, *Milan v. Clif Bar*

22  *LLC*, No. 18-cv-2354, Dkt. No. 1, ¶¶ 110–13 (Apr. 19, 2018) (alleging specific upper limit for

23  added sugar consumption based on FDA, WHO, and AHA recommendations); *accord Hadley*, 273

24  F. Supp. 3d at 1066–67; *Krommenhock*, 255 F. Supp. 3d at 953. Here, Plaintiffs do not allege—as

25  they did in *Milan*, *Hadley*, and *Krommenhock*—that there is a set upper limit for naturally occurring

26  sugar, to which consumption of the V8 Juices contribute. Plaintiffs assert that adults should

27  consume no more than 8 ounces of juice per day, *see* Compl. ¶ 71, but the source the Complaint

28  cites for the proposition quite simply does not say this. *See* RJN Ex. C. So, dismissal of this

1    Complaint can be readily reconciled with this Court's decision in *Milan*—both because the products

2    and the applicable regulations are different, and because key alleged facts are different.

3        *Second*, the meaning of the "Boost Your Morning Nutrition" claim is plainly communicated

4    to "reasonable consumers" with immediately adjacent graphics and text that set forth multiple true

5    and unambiguous messages to consumers about the products and their nutritional characteristics.

6    The V8 Juices are made from significant quantities of the depicted fruit and vegetables (as much

7    as 3 lbs. per bottle) and have significant amounts (enough to qualify as "healthy" under FDA

8    regulations and at least 20% DRV) of Vitamins A and C. *See* RJN Ex. A; App'x 1. So, when

9    consumers drink a glass of V8 Juice with their breakfast, they're at least 20% closer to achieving

10   their daily recommended dose of Vitamins A and C. And images of fruits and vegetables

11   communicate to consumers the truthful message that the food will have the sugars that naturally

12   occur in those ingredients. The clarity of this message is then corroborated by "no added sugar"

13   language explaining, again truthfully and accurately, that the foods do not contain added sugars. *Id*.

14   When the full label is considered, there is no deception. *Moore*, 4 F.4th at 883–84.

15       The Complaint cannot and does not contest the truth of *any* of these underlying facts about

16   the V8 Juices' ingredients and nutrients that directly explain the message of the "Boost Your

17   Morning Nutrition" claim. The prominence of this information in relation to the challenged claim

18   discredits the Complaint's assertion that a "reasonable consumer" would nonetheless be misled. *In*

19   *re: 5-Hour Mktg. & Sales Prac. Litig.*, 2018 WL 11354864, at *5 (C.D. Cal. Jan. 24, 2018)

20   ("Language prominently featured on [the product's] label . . . clearly indicate that the product

21   contains only four calories. Such information would not be ignored by a reasonable consumer.");

22   *Gitson v. Trader Joe's Co.*, 2013 WL 5513711, at *7 (N.D. Cal. Oct. 4, 2013) ("the accused label

23   itself makes it impossible for the plaintiff to prove that a reasonable consumer is likely to be

24   deceived") (relying on prominence of explanatory language to discredit plaintiffs' interpretation).

25       Dictionary definitions of the word "nutrition" corroborate this interpretation, as the label

26   uses that word as part of a connected and coherent message that specifies the ingredients and

27   nutrients in the V8 Juices—which is, after all, what the word "nutrition" literally means.

28   Dictionary.com ("nutrition. n. 4. food; nutriment"), https://www.dictionary.com/browse/nutrition;

Collins Dictionary ("nutrition. n. Nutrition is the process of taking food into the body and absorbing the nutrients in those foods."), available at: https://www.collinsdictionary.com/us/dictionary /english/nutrition; Merriam-Webster ("nutrition. 1. the act or process of nourishing or being nourished; *specifically*: the sum of the processes by which an animal or plant takes in and utilizes food substances"). Consistency between the label, and the actual meaning of the word "nutrition," thus confirms the implausibility of the Complaint under the "reasonable consumer" standard. *Becerra*, 945 F.3d at 1229–30.

*Third*, insofar as the Complaint ignores the remainder of the label and alleges instead that the "Boost Your Morning Nutrition" claim implies a message that should be interpreted to mean "healthy," *see supra* § II.B, this message is *also* true and not misleading to a reasonable consumer. V8 Juices are all low in nutrients that the FDA advises consumers to limit and high in nutrients like Vitamins A and C that the FDA encourages, so each one is qualified to explicitly bear labeling describing the product as "Healthy." *See infra* § III.B (discussing application of 21 C.F.R. § 101.65(d) to each of the V8 Juices thus allowing them to be labeled "healthy"). Binding case law holds that a "reasonable consumer" is not misled by labeling that complies with FDA guidance and regulations for the contested elements of that label. *Moore*, 4 F.4th at 885. The Ninth Circuit held in *Moore* that no "reasonable consumer" would be misled by an allegedly misleading ingredient statement for "honey" where that statement complied with relevant FDA Guidance and accompanying regulations. *Id*. The same thing is true here. The V8 Juices could literally bear the word "healthy" and be immune from suit challenging that word. *See infra* § III.B. It is nonsensical for Plaintiffs to contend that the labels are misleading for merely *implying* a message that FDA regulations allow the labels to bear *explicitly*. This analysis applies equally to the Complaint's challenge to "Healthy Greens" V8 Juice (the only variety that expressly uses the term "healthy").

And here the analysis goes a step beyond mere regulatory compliance, as the FDA and USDA both confirm that juice is *not* treated the same as other sugar-containing foods precisely because it is a healthy food whose consumption these agencies encourage. *See supra* § II.A (quoting RJN Ex. B, at B-080 ("Beverages that . . . contribute beneficial nutrients, such as . . . 100% juice, should be the primary beverages consumed.")); *see also* 81 Fed. Reg. at 33,835 ("We [the FDA]

agree that whole fruit, fruit pieces, pulps, purees, 100 percent fruit juices, and certain fruit juice concentrates *should not be considered added sugars because they are nutrient rich and maintain the basic properties of a fruit*, which is not considered to be an added sugar.") (emphasis added).

Finally, because the Complaint does not contain a theory of deception sufficient to meet the "reasonable consumer" standard, the warranty claims fail, too. *Yu v. Dr Pepper Snapple Grp., Inc.*, 2020 WL 5910071, at *7 (N.D. Cal. Oct. 6, 2020) (warranty claims fail where dependent on a theory of deception that does not meet the "reasonable consumer" standard under the UCL, FAL and CLRA); *Truxel*, 2019 WL 3940956, at *4 ("Both parties agree that Plaintiffs' breach of express and implied warranty claims fail on the same grounds that the consumer protection claims fail.").

## B.      Plaintiffs' Claims Are Preempted

Plaintiffs' Complaint fails for a second, independent reason: Their claims are preempted by the Nutrition Labeling and Education Act ("NLEA"). The NLEA, enacted in 1990, amended the FDCA and aimed to "strengthen the [FDA's] legal authority to require nutrition labeling on foods." H.R. Rep. No. 101-538 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 3336, 3337 (1990 WL 259223). The NLEA contains an express preemption provision that bars any state law requirements "not identical" to NLEA label requirements on health claims and nutrient content claims, among others. 21 U.S.C. § 343-1(a)(5); 21 U.S.C. § 343(r). The term "not identical" under the NLEA means "that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food [that] . . . [a]re not imposed by or contained in the applicable [federal statute or regulation] . . . or [d]iffer from those specifically imposed by or contained in the applicable" federal statute or regulation. 21 C.F.R. § 100.1(c)(4). "[C]onsistency is not the test; identity is." *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011).

Plaintiffs ask the Court to prohibit Campbell from truthfully pointing to the nutritional qualities of V8 Juices solely because the products contain sugar. Compl. ¶ 1. But FDA regulations and guidance expressly allow Campbell to do exactly what Plaintiffs seek to prohibit: food manufacturers may use words like "healthy" on product labels so long as the products meet nutritional requirement and do not contain a certain level of one of four "disqualifying nutrients." 21 C.F.R. § 101.65(d) (nutrient content claims); 21 C.F.R. § 101.14(a)(4) (same as to health

1    claims). Those disqualifying nutrients are fat, saturated fat, cholesterol, and sodium. 21 C.F.R.

2    § 101.65(d); 21 C.F.R. § 101.14(a)(4). Sugar is *not* a disqualifying nutrient. In fact, FDA expressly

3    declined to include sugar as a disqualifying nutrient for "healthy" claims. *See* 59 Fed. Reg. 24,232,

4    24,244 (May 10, 1994) ("The agency has not been persuaded by the comments that it is necessary

5    to include a 'low calorie' or 'low sugar' criterion in the definition of 'healthy' for the claim to be

6    useful and not misleading to consumers."); *see also* 58 Fed. Reg. 2,478, 2,491 (Jan. 6, 1993)

7    (similar as to health claims).

8         The Ninth Circuit recently held in *Clark v. Perfect Bar, LLC* that this decision by FDA to

9    exclude sugar from the list of disqualifying nutrients for health and nutrient content claims has

10   broad preemptive reach. It preempts state laws that challenge products marketed as "healthy" solely

11   because those products contain sugar, when those products are otherwise "healthy" under FDA

12   standards. 816 F. App'x 141, 142 (9th Cir. 2020). Plaintiffs in *Clark*, like Plaintiffs here, alleged

13   defendant deceptively labeled foods to communicate a message they were healthy, which plaintiffs

14   claimed was inconsistent with the foods' added sugar content. Judge Alsup dismissed on

15   "reasonable consumer" grounds, as well as defendant's other arguments, including preemption.

16   *Clark*, 2018 WL 7048788, at *2 ("This order adopts the arguments made by defendant.").

17        The Ninth Circuit affirmed on NLEA preemption grounds. The panel reasoned that "the

18   NLEA and its applicable regulations are silent on whether sugar levels preclude a product from

19   making health claims." *Id.* at 143. So, "[a]llowing a claim of misbranding under California law

20   based on misleading sugar level content would 'indirectly establish' a sugar labeling requirement

21   'that is not identical to the federal requirements,' a result foreclosed by our precedent." *Id.* (citing

22   *Hawkins*, 906 F.3d at 770). In doing so, the Ninth Circuit interpreted the plaintiffs' allegations as

23   contending that the labels communicated a message that the product was "healthy" even though

24   that express term was not used, and applied NLEA preemption as a result. *Id.* at 142 ("Appellants

25   alleged that Perfect Bar's packaging led them to believe that the bars were healthy when in fact

26   added sugar rendered the bars unhealthy.") (challenged claims included those not expressly stating

27   "healthy").

28        *Clark* applies and disposes of Plaintiffs' claims. As in *Clark*, Plaintiffs allege consumers

interpret "Boost Your Morning Nutrition" as meaning the V8 Juice products are "healthy," an interpretation Plaintiffs claim is false because the products contain sugar. *See* Compl. ¶ 1. But, as the Ninth Circuit held in *Clark*, this is contrary to the FDA's explicit decision *not* to ascribe disqualifying status to sugar, 21 C.F.R. § 101.65(d), and would therefore "indirectly establish" a sugar labeling requirement that is not identical to federal law. *Clark*, 816 F. App'x at 142–43.

      *Clark*'s reasoning applies with even greater force here because each of the V8 Juices affirmatively qualifies as "healthy" under federal law. *See* 21 C.F.R. § 101.65(d)(2)(F) (setting nutrient thresholds for "healthy" products). Each of the V8 Juices provides at least 20% of the DRV for Vitamins A and C, twice what the regulations require for "healthy" foods. *See supra* § II.A (all of the challenged V8 Juices exceed requirements for beneficial nutrients and either do not have, or are well below thresholds for disqualifying nutrients); 21 C.F.R. § 101.65(d)(2)(i)(F) (requiring foods labeled "healthy" to have "at least 10% RDI or the DRV per RA of one or more of vitamin A, vitamin C, calcium, iron, protein or fiber"). Banning Campbell from stating the nutritional benefits of these products—which are unquestionably nutrient-rich, healthy products under federal law—simply because the V8 Juices contain sugar is precisely the type of claim the Ninth Circuit found preempted in *Clark*. 816 F. App'x at 143.

      The analysis for the "Healthy Greens" variety of V8 Juice is even more direct, as FDA regulations permit Campbell to use the word "healthy." *See* 21 C.F.R. § 101.65(d)(2)(F). Because of its undisputed nutritional qualities, the "Healthy Greens" V8 Juice easily satisfies the FDA's requirements for foods labeled "healthy." *See* App'x 1, at 7 (contains 20% DRV of Vitamins A and C; no fat, saturated fat, or cholesterol, and 200 mg sodium). And, per § 101.65(d)(1)(ii), the "Healthy Greens" claim is made "in connection with" "explicit or implicit claim(s) or statement(s) about a nutrient": "with antioxidant vitamins A & C" and "No Sugar Added." *See* 21 C.F.R. § 101.60(c) (governing sugar content claims). Any challenge to the "Healthy Greens" language is expressly preempted. *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1073 (N.D. Cal. 2017). This rationale can be readily extended to the "Boost Your Morning Nutrition" statement as well, as it is a claim tied to the very nutrients the FDA has determined qualify the V8 Juices as "healthy" foods. *See supra* § II.A.

1

**C.      Plaintiffs Are Not Entitled To Their Requested Equitable Remedies.**

2

**1.      Plaintiffs lack standing to seek injunctive relief.**

3      A plaintiff must have Article III standing to seek injunctive relief, which requires a plausible

4  allegation of potential future harm. *See Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1113

5  (9th Cir. 2017), *as amended on denial of reh'g en banc*, 889 F.3d 956, 969–70 (9th Cir. 2018); *In*

6  *re Coca-Cola Products Mktg. & Sales Pracs. Litig. (No. II)*, --- F. App'x ----, 2021 WL 3878654

7  (9th Cir. Aug. 31, 2021) (Mem).

8      In cases involving allegedly misleading labeling, this requires some plausible allegation of

9  the plaintiff's intent to buy the products-in-question in the future, not some form of the products

10  altered to satisfy plaintiff. *See Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.,* 2019 WL 2515919,

11  at *5 (N.D. Cal. June 18, 2019) (no standing to seek injunctive relief when "Plaintiff has not alleged

12  that he would purchase the products-in-question if the representation 'Natural' or 'All Natural

13  Ingredients' was removed"). Here, none of the Plaintiffs allege a desire to purchase the Products if

14  the challenged claim was removed. Compl. ¶ 106. To the contrary, Plaintiffs affirmatively allege

15  they *do not want* the products as formulated. Compl. ¶¶ 85, 88, 91, 94, 97. This is fatal to their

16  standing to seek injunctive relief. *Yu*, 2019 WL 2515919, at *5.

17      Nor do they plausibly allege any other concrete, imminent injury. Plaintiffs' primary

18  assertion is that they still want to purchase healthy foods and would likely purchase the Products if

19  they could "trust" the labels were not false or misleading. Compl. ¶¶ 107–08. But these types of

20  allegations are no longer sufficient to confer Article III standing after the Supreme Court's decision

21  in *TransUnion v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). That's because "[a] plaintiff 'cannot

22  satisfy the demands of Article III by alleging a bare procedural violation,'" and "[a]n 'asserted

23  informational injury that causes no adverse effects cannot satisfy Article III.'" *In re Coca-Cola*

24  *Products Mktg. & Sales Pracs. Litig. (No. II)*, --- F. App'x ----, 2021 WL 3878654 (9th Cir. Aug.

25  31, 2021) (Mem) (citing *TransUnion*, 141 S. Ct. at 2214). *Coca-Cola* applied *TransUnion* to claims

26  of future injury similar to Plaintiffs. In finding plaintiffs lacked standing to seek injunctive relief,

27  it reasoned that "desire for Coca-Cola to truthfully label its products, without more, is insufficient

28  to demonstrate that they have suffered any particularized adverse effects." *Id.* So too here.

1   Plaintiffs' mere desire for what they would consider legally compliant labels is insufficient.

2         **2.**      **Plaintiffs' monetary equitable relief should be dismissed for failure to**
3                 **allege lack of an adequate remedy at law.**

4         Plaintiffs seek equitable monetary relief, but they fail to allege they lack an adequate remedy

5   at law as required by *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). In *Sonner*,

6   the Ninth Circuit held that a plaintiff "must establish that she lacks an adequate remedy at law

7   before securing equitable restitution for past harm under the UCL and CLRA." *Id.* at 844; *In re*

8   *MacBook Keyboard Litig.*, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020). *Sonner* applies at

9   the motion to dismiss stage. *Zabak v. Kellogg Sales Co.*, 2020 WL 6381987, at *4 (S.D. Cal. Oct.

10  29, 2020). Plaintiffs seek restitution under the UCL and FAL, which in a false advertising case

11  amounts to the return of money they claim they overpaid for the V8 Juices as a result of the

12  challenged claims. Compl. ¶ 133, 145; *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923,

13  at *8 (N.D. Cal. Dec. 15, 2014) ("The proper measure of restitution in a mislabeling case is the

14  amount necessary to compensate the purchaser for the difference between a product as labeled and

15  the product as received."). That requested remedy is entirely duplicative of their request for

16  compensatory relief under the CLRA and for breach of warranties. Compl. ¶¶ 152, 159. Plaintiffs

17  allege restitution *could* sweep broader than compensatory damages, but that is contrary to courts'

18  interpretation of damages available to them under the UCL and FAL, *see Werdebaugh*, 2014 WL

19  7148923, at *8, and this type of "conditional pleading does not satisfy *Sonner*'s rule." *Johnson v.*

20  *Trumpet Behav. Health, LLC*, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022).

21               **VI.**    **CONCLUSION**

22        For the foregoing reasons, Campbell respectfully requests this Court dismiss Plaintiffs'

23  Complaint with prejudice.

24

25

26

27

28

1

2
   DATED:  February 17, 2022           **PERKINS COIE LLP**

3
                             By:  */s/ Charles C. Sipos*

4
                               David T. Biderman (Cal. Bar No. 101577)
                               DBiderman@perkinscoie.com

5
                               Charles C. Sipos (*pro hac vice*)
                               CSipos@perkinscoie.com

6
                               Lauren W. Staniar (*pro hac vice*)
                               LStaniar@perkinscoie.com

7
                               Attorneys for Defendants
                               CAMPBELL SOUP COMPANY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28