**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT (SBN 321222)
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE BANTA YOSHIDA, ANTHONY MANCUSO, and ASHLEY MISTLER, on behalf of themselves, those similarly situated and the general public,<br><br>     Plaintiffs,<br><br>     v.<br><br>CAMPBELL SOUP COMPANY,<br><br>     Defendant. | Case No: 3:21-cv-09458-JD<br><br><u>CLASS ACTION</u><br><br>**FIRST AMENDED COMPLAINT FOR:**<br>**VIOLATIONS OF CAL. BUS. & PROF. CODE §§17200** *et seq.***; CAL. BUS. & PROF. CODE §§17500** *et seq.***; CAL. CIV. CODE §§ 1750** *et seq.***; and BREACH OF EXPRESS WARRANTIES**<br><br>Judge: Hon. James Donato<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiffs Kyle Banta Yoshida, Anthony Mancuso, and Ashley Mistler, on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, hereby sue Defendant Campbell Soup Company ("Campbell"), and allege the following upon their own knowledge, or where they lack personal knowledge, upon information and belief, including the investigation of their counsel.

## INTRODUCTION

1.       For several years, Campbell has sold a line of V8 brand juices called "Fruit and Vegetable Blends" (the "Products" or "Juice Blends").[1]

2.       Campbell represents on their labels that the Juice Blends provide the same nutritional and health benefits as eating whole fruits and vegetables. These and the other representations and omissions of material facts, however, are false and misleading because while consuming whole fruit and vegetables protects against disease, consuming fruit juices like the V8 Juice Blends increases the risk of type 2 diabetes, obesity, cardiovascular disease, and all-cause mortality.

3.       Plaintiffs bring this action against Campbell on behalf of themselves, similarly situated Class Members, and the general public, to enjoin Campbell from deceptively marketing the Juice Blends with false and misleading labeling claims and to recover compensation for injured Class Members.

## JURISDICTION & VENUE

4.       This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from Defendant. In addition, more than two-thirds of the members of the class reside in states other than the state in which Defendant is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

5.       The Court has personal jurisdiction over Defendant pursuant to Cal. Code Civ. P. § 410.10

---

[1] Through their prefiling investigation, Plaintiffs were able to identify at least seventeen flavors of the Fruit and Vegetable Blends that were sold during the four years preceding the filing of this Complaint (the "Class Period"). *See* Appendix 1. To the extent that Plaintiffs were unable to identify all flavors sold during the Class Period, this Complaint should be read to include rather than exclude any such flavors of the Fruit and Vegetable Blends.

because Campbell has purposely availed itself of the benefits and privileges of conducting business activities within the State of California through the intentional promotion, marketing, distribution, and sale of the Juice Blends in California.

6.  Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c), because Campbell resides (*i.e.*, is subject to personal jurisdiction) in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## DIVISIONAL ASSIGNMENT

7.  This civil action arises substantially out of acts and omissions of Defendant's that occurred in San Francisco County. Accordingly, pursuant to Civil Local Rule 3-2(c) & (d), this action is correctly assigned to the San Francisco or Oakland Division.

## THE PARTIES

8.  Plaintiff Kyle Banta Yoshida is a resident of Oakland, California.

9.  Plaintiff Anthony Mancuso is a resident of Los Angeles, California.

10.  Plaintiff Ashley Mistler is a resident of West Sacramento, California.

11.  Defendant Campbell Soup Company is a Delaware Corporation with its principal place of business at 1 Campbell Place in Camden, New Jersey.

## FACTS

### I.  CAMPBELL MISLEADINGLY MARKETS THE JUICE BLENDS AS PROVIDING THE SAME NUTRITIONAL BENEFITS AS WHOLE FRUITS AND VEGETABLES

12.  Consumers prefer healthful foods and are willing to pay more for, and purchase more often, products marketed and labeled as being healthy.[2]

13.  Campbell describes having "Healthy Products," as a "[p]riorit[y] issue[]" for its consumers.[3]

14.  Campbell accordingly employs a strategic marketing campaign that positions the Juice Blends as providing the same nutritional and health benefits as eating whole fruits and vegetables.

---

[2] *See*, *e.g.*, Nancy Gagliardi, "Consumers Want Healthy Foods—And Will Pay More For Them," *Forbes* (Feb. 18, 2015) ("88% of those polled are willing to pay more for healthier foods" (citing Neilson, "2015 Global Health & Wellness Survey," at 11 (Jan. 2015))).

[3] Campbell, "2015 Update of the Corporate Social Responsibility Report," at 24, *available at* https://www.campbellsoupcompany.com/wp-content/uploads/2022/03/Campbells_2015_CSR_Report.pdf.

15.     On the V8 website, for example, Campbell claims that its "V8 Fruit & Vegetable Blends are a healthy beverage option for those looking for a perfect blend of vegetables . . . . "[4]

16.     Campbell does this expressly on the Juice Blends' labeling as well through a combination of phrases and images.

17.     First, on the Juice Blends labeling, Campbell represents they contain "1 serving of veggies," "1 serving of fruit," "[1, 1½, or 2] combined servings of veggies and fruit," "8 fl. oz. has 1 serving of vegetables (1/2 cup)," "8 fl. oz. has [½ or 1] serving of vegetables (¼ or ½ cup) and [½, 1] serving of fruit ([¼ or ½] cup)," and "Dietary guidelines recommend 2½ cups of a variety of vegetables and 2 cups of fruit per day for a 2,000 calorie diet."

18.     Second, it reinforces the message that the Juice Blends provide the nutritional equivalent of healthy whole fruits and vegetables by characterizing the Juice Blends as a "Boost [to] Your Morning Nutrition."

19.     Third, it prominently uses pictures of fresh whole fruit and vegetables.

---

[4]   Campbell, "V8® Fruit & Vegetable Blends – Healthy Greens," *available at* https://www.campbells.com/v8/products/v8-blends/healthy-greens/.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22   20.    These statements and images individually, and especially in combination, create the

23 misleading impression that drinking the Juice Blends will provide the same or similar health benefits as

24 eating healthy whole fruits and vegetables.

25   21.    These images and statements, however, are false or at least highly misleading because

26 consuming the Juice Blends is not equivalent to consuming whole vegetables or fruits. Rather, consuming

27 the Juice Blends is likely to increase risk of disease whereas consuming whole fruits and vegetables is

28 protective and reduces risk of disease.

22.     While vegetables and "fresh fruits are loaded with fiber,"[5] the Juice Blends contain little-to-no fiber.[6] And "because fruit juices contain little-to-no fiber, you don't feel satiated after drinking them. According to Susan Jebb, a government advisor and head of the diet and obesity research group at the Medical Research Council's Human Nutrition Research unit at Cambridge University, 'Fruit juice isn't the same as intact fruit and it has as much sugar as many classical sugar drinks. It is also absorbed very fast, so by the time it gets to your stomach your body doesn't know whether it's Coca-Cola or orange juice, frankly.'" Ms. Jebb accordingly cautioned consumers, "don't fall for the fruit juice trap and don't believe the hype that it's a good addition to a balanced meal." "The logic is pretty simple: people believe fruit juices are equivalent to the serving sizes of a few piece of fruit, . . . and have about the same effects as eating fruit. Unfortunately, this is wrong . . . ."[7]

23.     One reason this is wrong is that "[f]luids are able to pass into the intestine much faster than the corresponding solids, and thus are absorbed more rapidly. Thus, fruit juice causes the blood glucose and the insulin levels to spike faster and higher than the whole fruit does. This explains how fruit juice increases the risk for type 2 diabetes and obesity . . . , in contrast to the lowered risk with whole fruit. . . . Thus research concurs that eating whole fruit is beneficial to health and prevents a broad category of disease, while fruit juice may be counterproductive to overall health in some categories."[8]

---

[5] McClusky, Joan, "The Whole Truth About Whole Fruits," *WebMD* (May 31, 2017). Diabetes affects 25.8 million Americans, and can cause kidney failure, lower-limb amputation, and blindness. In addition, diabetes doubles the risk of colon and pancreatic cancers and is strongly associated with coronary artery disease and Alzheimer's disease. *See* Aranceta Bartrina, J., et al., "Association between sucrose intake and cancer: a review of the evidence," *Nutrición Hospitalaria*, Vol. 28 (Suppl. 4), 95-105 (2013); Garcia-Jimenez, C., "A new link between diabetes and cancer: enhanced WNT/beta-catenin signaling by high glucose," *Journal of Molecular Endocrinology*, Vol. 52, No. 1 (2014); Linden, G.J., "All-cause mortality and periodontitis in 60-70-year-old men: a prospective cohort study," *Journal of Clinical Periodontal*, Vol. 39, No. 1, 940-46 (October 2012).

[6] McClusky, "The Whole Truth About Whole Fruits," *supra* n.5.

[7] "Don't Fall for the Juice Trap," *Apartments For Us* (Oct. 15, 2018). An article in *The Guardian* confirms this blog post accurately quotes Ms. Jebb. *See* Saner, Emine, "How fruit juice went from health food to junk food," *The Guardian* (Jan. 17, 2014) (quoting Ms. Jebb). That this was published in 2018 also supports the notion that reasonable consumers are unaware of how juice consumption will negatively impact their health, particularly in comparison to the consumption of whole fruits.

[8] Thomas, Liji, MD, "Differences Between Natural Whole Fruit and Natural Fruit Juice," *News Medical* (Feb. 27, 2019).

24.     As Dr. Robert Lustig, a professor emeritus of Pediatrics, Division of Endocrinology at the University of California, San Francisco, explains, "The best fiber is the combination of both soluble and insoluble fiber, and that's pretty much everything that comes out of the ground—until it's processed." In answering the question "was anything lost nutritionally in the process of juicing?" Dr Lustig says "[t]he answer is an emphatic yes—all of the insoluble fiber is now gone." That means you no longer get the "suppression of the insulin response associated with the combination of" soluble and insoluble fiber. "Remember, it doesn't matter where the fructose comes from—fruit, sugar cane, beets, without the fiber, it all has the same metabolic effect on your body. Furthermore, juice is as egregious a delivery vehicle for sugar as is soda. Studies of juice consumption show increased risk of diabetes and heart disease even after controlling for calories, while whole fruit demonstrates protection. It's the processing that causes the problems."[9]

25.     Barry M. Popkin, PhD, a W. R. Kenan Jr. Distinguished Professor in the Department of Nutrition at University of North Carolina, Gillings School of Global Public Health, has said that "as people change their drinking habits to avoid carbonated soft drinks, the potential damage from naturally occurring fructose in fruit juices and smoothies is being overlooked." "'Think of eating one orange or two and getting filled,' he said. 'Now think of drinking a smoothie with six oranges and two hours later it does not affect how much you eat. The entire literature shows that we feel full from drinking beverages like smoothies but it does not affect our overall food intake, whereas eating an orange does. So pulped-up smoothies do nothing good for us but do give us the same amount of sugar as four to six oranges or a large coke. It is deceiving.'"[10]

26.     Another important difference is that while vegetables and "fresh fruits are loaded with. . . antioxidants and other great nutrients"[11] the Juice Blends apparently get much of their vitamin A and vitamin C not from the juice concentrate itself, but rather from the additives Beta Carotene and Ascorbic Acid.

---

[9] Lustig, Robert H., MD, MSL, Metabolical: The Lure and the Lies of Processed Food, Nutrition, and Modern Medicine, 259-60 (Harper Wave 2021).

[10] Boseley, Sarah, "Smoothies and fruit juices are a new risk to health, US scientists warn," *The Guardian* (Sept. 7, 2013) (noting that "researchers from the UK, USA and Singapore found that in large-scale studies involving nurses, people who ate whole fruit, especially blueberries, grapes and apples, were less likely to get type 2 diabetes . . . but those who drank fruit juice were at increased risk. People who swapped their fruit juice for whole fruits three times a week cut their risk by 7%").

[11] McClusky, "The Whole Truth About Whole Fruits," *supra* n.5.

27.     Because of the important differences between consuming juice and consuming whole fruits and vegetables, studies show that eating whole fruits and vegetables is healthy—i.e. associated with decreased risk of disease—while consuming juice is unhealthy—i.e. associated with increased risk of disease.

28.     For example, "studies show that eating whole fruit gives you the most of this food group's potential benefits, like helping to prevent heart disease, stroke and some types of cancer" and "may significantly lower your risk of type 2 diabetes . . . Conversely, drinking fruit juice every day had the opposite effect, increasing the chances of diabetes by 21 percent."[12]

29.     Numerous studies have similarly found that whole fruits and vegetables have a protective effect regarding diabetes whereas juice consumption not only has no protective effect, but actually increases risk of diabetes. [13]

30.     Likewise, while consuming whole fruits and vegetables is protective and decreases risk of

---

[12] McClusky, "The Whole Truth About Whole Fruits," *supra* n.5. *See also* Dreher, Mark L., "Whole Fruits and Fruit Fiber Emerging Health Effects," *Nutrients* (Nov. 2018) (emphasis added) ("health benefits [of consuming whole fruits] include: . . . . reducing risk of cardiovascular disease, type 2 diabetes and metabolic syndrome; defending against colorectal and lung cancers"); Muraki, I., et al., "Fruit consumption and risk of type 2 diabetes: results from three prospective longitudinal cohort studies," *BMJ* (Aug. 2013) ("[g]reater consumption of specific whole fruits . . . is significantly associated with a lower risk of type 2 diabetes, whereas greater consumption of fruit juice is associated with a higher risk.").

[13] Bazzano, L.A., et al., "Intake of fruit, vegetables, and fruit juices and risk of diabetes in women," *Diabetes Care*, Vol. 31, 1311-17 (2008) ("cohort study of 71,346 women from the Nurses' Health Study followed for 18 years showed that those who consumed 2 to 3 apple, grapefruit, and orange juices per day (280-450 calories and 75-112.5 grams of sugar) had an 18% greater risk of type 2 diabetes than women who consumed less than 1 sugar-sweetened beverage per month"); Drouin-Chatier, J., et al., "Changes in Consumption of Sugary Beverages and Artificially Sweetened Beverages and Subsequent Risk of Type 2 Diabetes: Results From Three Large Prospective U.S. Cohorts of Women and Men," *Diabetes Care*, Vol. 42, pp. 2181-89 (Dec. 2019) (finding that increasing sugary beverage intake—which included both sugar-sweetened beverages and fruit juice—by half-a-serving per day over a 4-year period was associated with a 16% greater risk of type 2 diabetes); Imamura, F., et al., "Consumption of sugar sweetened beverages, artificially sweetened beverages, and fruit juice and incidence of type 2 diabetes: systematic review, meta-analysis, and estimation of population attributable fraction," *BMJ*, Vol. 351 (2015) (meta-analysis of 17 prospective cohort studies showed higher consumption of fruit juice was associated with a 7% greater incidence of type 2 diabetes); World Health Organization, "WHO urges global action to curtail consumption and health impacts of sugary drinks" (Oct. 11, 2016), *available at* https://www.who.int/news/item/11-10-2016-who-urges-global-action-to-curtail-consumption-and-health-impacts-of-sugary-drinks ("Consumption of free sugars, including products like sugary drinks, is a major factor in the global increase of people suffering from obesity and diabetes[.]").

*Banta Yoshida et al. v. Campbell Soup Co.*
FIRST AMENDED COMPLAINT

cardiovascular diseases, consuming juice increases risk of cardiovascular diseases[14] and all-cause mortality.[15]

31.     Because consuming whole fruits and vegetables has a very different physiological effect than consuming juice and the two are not equivalent as Campbell suggests, organizations like the World Health Organization recommend "limiting the consumption of . . . all types of beverages containing free sugars," including "*fruit or vegetable juices and drinks . . .* and [] eating fresh fruit and raw vegetables as snacks instead of sugary snacks."[16]

32.     In short, because drinking the Juice Blends is not equivalent to eating a serving of vegetables or fruit, Campbell's representations that the Juice Blends provide "1 serving of veggies," "1 serving of fruit," "[1, 1½, or 2] combined servings of veggies and fruit," "8 fl. oz. has 1 serving of vegetables (1/2 cup)," "8 fl. oz. has [½ or 1] serving of vegetables (¼ or ½ cup) and [½, 1] serving of fruit ([¼ or ½] cup)," and "Dietary guidelines recommend 2½ cups of a variety of vegetables and 2 cups of fruit per day for a 2,000 calorie diet," along with images of whole fruits and vegetables, are false or at least highly misleading.

33.     Labeling the Juice Blends as a way to "Boost Your Morning Nutrition" (and naming one Juice Blend flavor "healthy greens")—especially in combination with Campbell's other representations and images of whole fruits and vegetables—is false or at least highly misleading because the Products are harmful rather than beneficial to health.

---

[14] Hansen, L., et al., "Fruit and vegetable intake and risk of acute coronary syndrome," *British J. of Nutr.*, Vol. 104, p. 248-55 (2010) (finding "a tendency towards a lower risk of ACS [acute coronary syndrome] . . . for both men and women with higher fruit and vegetable consumption," but "a higher risk . . . among women with higher fruit juice intake[.]"); Pase, M.P., et al., "Habitual intake of fruit juice predicts central blood pressure," *Appetite*, Vol. 84, p. 658-72 (2015) (people who consumed juice daily, rather than rarely or occasionally, had significantly higher central systolic blood pressure, a risk factor for cardiovascular disease").

[15] Collin, L.J., et al., "Association of Sugary Beverage Consumption With Mortality Risk in US Adults: A Secondary Analysis of Data From the REGARDS Study," *JAMA Network Open*, Vol. 2, No. 5 (May 2019) (cohort study of 13,440 black and white adults 45 years and older, observed for a mean of 6 years, each additional 12-oz serving per day of fruit juice was associated with a 24% higher all-cause mortality risk). *See also* Thomas, Liji, MD, "Differences Between Natural Whole Fruit and Natural Fruit Juice," *News Medical* (Feb. 27, 2019) ("In one study, increased fruit juice consumption in early life led to a higher risk of obesity and shorter adult height.").

[16] World Health Organization, "Healthy diet" (Apr. 29, 2020), *available at* https://www.who.int/news-room/fact-sheets/detail/healthy-diet (emphasis added).

34.     Finally, while making these representations and using these images, Campbell regularly and intentionally omits material information regarding the dangers of consuming the juice blends and that they are not in fact nutritionally equivalent to whole fruits and vegetables. Campbell is under a duty to disclose this information to consumers because (a) Campbell is revealing some information about its Juice Blends— enough to suggest they are nutritionally equivalent to whole fruits and vegetables and are healthy or beneficial to health—without revealing additional material information, (b) Campbell's deceptive omissions concern human health, and specifically the detrimental health consequences of consuming its Juice Blends, (c) Campbell was in a superior position to know of the dangers presented by the sugars in its juices, as it is a food company whose business depends upon food science and policy, and (d) Campbell actively concealed material facts not known to Plaintiffs and the Class.

## II.    CAMPBELL'S CONDUCT IS LIKELY TO MISLEAD THE REASONABLE CONSUMER

35.     "[M]any Americans believe that juice is good for them. In one survey of parents of young children, 1 in 3 believed that juice was at least as healthy as fruit."[17] "At first glance, it is reasonable to think that juice has health benefits. Whole fruit is healthy, and juice comes from fruit, so it must be healthy, too."[18] "The truth is that fruit juice, even if it is freshly pressed, 100 percent juice, is little more than sugar water."[19]

36.     "When choosing a fruit juice, consumers may often fall victim to a health halo surrounding fruit products."[20] The "health halo" effect is a well-known cognitive phenomenon that occurs "when one aspect of the food is portrayed as healthy, [leading] consumers [] to categorize the entire food item as healthy."[21] Thus, it is well understood that "marketing actions that emphasize one aspect of the food as

---

[17] Ferris, Heather, et al., "People think juice is good for them. They're wrong." *The Washington Post* (Apr. 26, 2017).

[18] *Id.*

[19] *Id.*

[20] Sah, Anumeha, et al., "Visible sugar: Salient sugar information impacts health perception of fruit juices but only when motivated to be responsible and not when motivated to enjoy," *Appetite*, Vol. 164 (Apr. 2021) [hereinafter "Anumeha, Salient sugar information"].

[21] Chandon, Pierre, et al., "Does food marketing need to make us fat? A review and solutions," *Nutrition Reviews*, Vol. 70(10) (Oct. 2012) [hereinafter "Pierre Review"].

being healthy lead to the creation of a 'health halo,' which makes the food appear healthier than it is."[22]

37.   Marketing companies, like Campbell, know that people have a "natural tendency to categorize food as intrinsically good or bad, healthy or unhealthy."[23] Campbell exploits this tendency through its use of the challenged serving statements and images of fresh fruit, knowing consumers are likely to think of the Juice Blends as being in the same category as whole fruit and vegetables.

38.   Marketing companies, like Campbell, also know that most consumers are unsophisticated when it comes to nutrition and that they must use inference-making to draw conclusions about the nature of food. It is also well known, that the inferences made by consumers will be consistent with the statements and images that are presented on a label.[24] "By focusing on vitamin and mineral additives, beverage manufacturers distract consumers from the health risks associated with some of the other common ingredients in their beverages: sugar, salt and caffeine, often delivered at levels that may have serious negative consequences."[25]

39.   "Health halos can have surprisingly strong effects"[26] that can be hard to dispel, even for proactive individuals that are concerned with health and nutrition. For example, "Chandon and Wansink . . . found that consumers' nutritional involvement . . . did not reduce the halo effect."[27]

---

[22] Chandon, Pierre, "How Package Design and Packaged-based Marketing Claims Lead to Overeating," *Applied Economic Perspective and Policy*, Vol. 35 (2012) ("consumers tend to consider packaging-based marketing claims and design cues, especially for new foods (e.g., energy drinks) that they are unfamiliar with. This occurs primarily via one of two processes: the categorization of food into a pre-existing natural or goal-derived category (e.g., 'a snack' or 'healthy' food), or inferences made about what is missing from the existing attribute information (e.g., inferring calories from 'reduced nutrient'").

[23] Pierre Review, *supra* n.21 ("the finding that people expect that they can eat more, and do, when marketing actions lead the food to be categorized as healthy is robust and is replicated independently of people's BMI, gender, or restrained eating").

[24] *See* Chandon, "How Package Design and Packaged-based Marketing Claims Lead to Overeating," *supra* n.22.

[25] Crawford, Patricia, DrPH, RD, et al., "Hiding Under a Health Halo: Examining the Data Behind Health Claims on Sugary Beverages," California Center for Public Health Advocacy (Aug. 2014) [hereinafter "Crawford, Hiding Under a Health Halo"].

[26] Chandon, "How Package Design and Packaged-based Marketing Claims Lead to Overeating," *supra* n.22.

[27] *Id.*

40.     Moreover, "mandated nutrition labels have been criticized for being too complex for many consumers to understand and use."[28] "Using NFP labels requires not only being able to read and perform arithmetic but also — just as importantly — the ability to reason with words and numbers. According to our results, a substantial proportion of consumers clearly struggle to effectively use the information contained in a nutrition label."[29]

41.     Consumers' inability to effectively use the nutrition label is particularly problematic in light of their tendency to rely heavily on symbolic cues of healthfulness. For example, "[s]imply adding the word 'fruit' makes sugar healthier[]" in the minds of consumers "since 'fruit' is commonly seen as symbolizing healthiness . . . ."[30]

42.     Further, the process of determining what is healthy or unhealthy is particularly difficult for consumers given that they are inundated with conflicting information—some based on science, and some based on the marketing objectives of the food industry.

43.     In short, because "beverages like fruit juice are marketed as a healthy and natural source of vitamins" this creates a health halo and "consumers may thus often assume that juice has health benefits and may be reluctant to associate fruit juice with other sugary beverages."[31] Not surprisingly, "[w]hen asked about the healthfulness of different drink categories for their child, [79 percent] of parents rated 100 % juice

---

[28] Crawford, "Hiding Under a Health Halo," *supra* n.25.

[29] *Id*. ("Some studies have found that even high school graduates and college students lack the basic health literacy skills to effectively apply nutrition label information[ ].").

[30] Sutterlin, Bernadette, et al., "Simply adding the word 'fruit' makes sugar healthier: The misleading effect of symbolic information on the perceived healthiness of food," *Appetite* (July 2015) ("The labeling of the ingredients by making use of symbolic information may, consequently, exert a misleading effect on a consumer's assessment of the product's healthiness. The findings suggest that the effect is quite robust. A more profound and comprehensive evaluation of the provided information (as occurs with people with pronounced health consciousness) does not protect against the misleading effect of symbolic information, and does not add to judgment accuracy. This indicates that relying and drawing on the symbolic meaning of information is, to a certain extent, an automatic and implicit process that cannot easily be corrected by increasing people's health consciousness.").

[31] Anumeha, Salient sugar information, *supra* n.20.

. . . as somewhat or very healthy."[32]

## III.      THE JUICE BLENDS' LABELING VIOLATES STATE AND FEDERAL REGULATIONS

44.     The Juice Blends and their challenged labeling statements violate California Health and Safety Code §§109875, *et. seq.* (the "Sherman Law"), which has expressly adopted the federal food labeling requirements as its own. *See e.g.*, *id.* § 110100, *id.* § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulation adopted pursuant thereto.").

45.     First, the challenged claims are false and misleading for the reasons described herein, in violation of 21 U.S.C. § 343(a), which deems misbranded any food whose "label is false or misleading in any particular." Campbell accordingly also violated California's parallel provision of the Sherman Law. *See* Cal. Health & Safety Code § 110670.

46.     Second, despite making the challenged claims, Campbell "fail[ed] to reveal facts that are material in light of other representations made or suggested by the statement[s], word[s], design[s], device[s], or any combination thereof," in violation of 21 C.F.R. § 1.21(a)(1). Such facts include the detrimental health consequences of consuming the Juice Blends at typical levels, including increased risk of metabolic disease, cardiovascular disease, type 2 diabetes, liver disease, obesity, high blood triglycerides and cholesterol, hypertension, and death.

47.     Third, Campbell failed to reveal facts that were "[m]aterial with respect to the consequences which may result from use of the article under" both "[t]he conditions prescribed in such labeling," and "such conditions of use as are customary or usual," in violation of § 1.21(a)(2). Namely, Campbell failed to disclose the increased risk of serious chronic disease and death that is likely to result from the usual consumption of the Juice Blends in the customary and prescribed manners.

## IV.      PLAINTIFFS' PURCHASE, RELIANCE, AND INJURY

48.     As best he can recall, Mr. Banta Yoshida purchased Campbell's Juice Blends, including at least the Healthy Greens, Caribbean Greens, Carrot Mango, and Orange Carrot flavors, at various times during the Class Period. Mr. Banta Yoshida recalls making his purchases at local stores in the Oakland,

---

[32] Munsell, C., et al., "Parents' beliefs about the healthfulness of sugary drink options: Opportunities to address misperceptions," *Public Health Nutrition*, Vol. 19(1):46-54 (Jan. 2016).

Berkeley, and San Francisco areas, including at his local Safeway, Whole Foods, and Co-op, each of which he regularly shops at. He most frequently shopped at, and purchased the Juice Blends from the Safeway on College Avenue in Oakland, and from the Whole Foods on Telegraph Avenue in Berkeley.

49.     In purchasing the Juice Blends, Mr. Banta Yoshida was exposed to, read, and relied upon Campbell's labeling claims and images that were intended to appeal to consumers interested in healthy products. To the best of his recollection, Mr. Banta Yoshida read and relied on Campbell's labeling representations including "Boost Your Morning Nutrition" and "Healthy Greens," images of whole fruits and vegetables, and statements regarding the number of servings of vegetables and fruit that the Juice Blends provide. Such serving statements include: "1 serving of veggies," "1 serving of fruit," "[1, 1½, or 2] combined servings of veggies and fruit," "8 fl. oz. has 1 serving of vegetables (1/2 cup)," "8 fl. oz. has [½ or 1] serving of vegetables ([¼ or ½] cup) and [½, 1] serving of fruit ([¼ or ½] cup)," and "Dietary guidelines recommend 2½ cups of a variety of vegetables and 2 cups of fruit per day for a 2,000 calorie diet."

50.     These statements and images led Mr. Banta Yoshida to believe that drinking the products would provide similar nutritional benefits as consuming whole fruits and vegetables and that drinking the Juice Blends would be beneficial rather than detrimental to health. These representations and images expressly stating or implying that the products provide the same nutritional benefits as whole fruits and vegetables and characterizing the healthfulness of the Juice Blends, were and are deceptive. This is because scientific evidence demonstrates that, in contrast to consuming whole fruits and vegetables which has protective and beneficial health effects, consuming fruit juice is detrimental to health.

51.     As best he can recall, Mr. Mancuso purchased Campbell's Juice Blends, including at least the Strawberry Banana and Pomegranate Blueberry flavors, at various times during the Class Period. Mr. Mancuso recalls making his purchases at local stores like the Ralph's and Target in Woodland Hills on Ventura Boulevard, both of which he regularly shops at.

52.     In purchasing the Juice Blends, Mr. Mancuso was exposed to, read, and relied upon Campbell's labeling claims and images that were intended to appeal to consumers interested in healthy products. To the best of his recollection, Mr. Mancuso read and relied on Campbell's labeling representations including "Boost Your Morning Nutrition" and "Healthy Greens," images of whole fruits and vegetables, and statements regarding the number of servings of vegetables and fruit that the Juice Blends

13

provide. Such serving statements include: "1 serving of veggies," "1 serving of fruit," "[1, 1½, or 2] combined servings of veggies and fruit," "8 fl. oz. has 1 serving of vegetables (1/2 cup)," "8 fl. oz. has [½ or 1] serving of vegetables ([¼ or ½] cup) and [½, 1] serving of fruit ([¼ or ½] cup)," and "Dietary guidelines recommend 2½ cups of a variety of vegetables and 2 cups of fruit per day for a 2,000 calorie diet."

53.     These statements and images led Mr. Mancuso to believe that drinking the products would provide similar nutritional benefits as consuming whole fruits and vegetables and that drinking the Juice Blends would be beneficial rather than detrimental to health. These representations and images expressly stating or implying that the products provide the same nutritional benefits as whole fruits and vegetables and characterizing the healthfulness of the Juice Blends, were and are deceptive. This is because scientific evidence demonstrates that, in contrast to consuming whole fruits and vegetables which has protective and beneficial health effects, consuming fruit juice is detrimental to health.

54.     As best she can recall, Ms. Mistler purchased the Campbell's Juice Blends, in at least Berry Bliss and Healthy Greens flavors, during the Class Period. Ms. Mistler believes she purchased Campbell's Juice Blends from local stores including the Target located at 2005 Town Center Plaza in West Sacramento, California 95691, and the Walmart located at 755 Riverpoint Court in West Sacramento, California 95605.

55.     In purchasing the Juice Blends, Ms. Mistler was exposed to, read, and relied upon Campbell's labeling claims and images that were intended to appeal to consumers interested in healthy products. To the best of her recollection, Ms. Mistler read and relied on Campbell's labeling representations including "Boost Your Morning Nutrition" and "Healthy Greens," images of whole fruits and vegetables, and statements regarding the number of servings of vegetables and fruit that the Juice Blends provide. Such serving statements include: "1 serving of veggies," "1 serving of fruit," "[1, 1½, or 2] combined servings of veggies and fruit," "8 fl. oz. has 1 serving of vegetables (1/2 cup)," "8 fl. oz. has [½ or 1] serving of vegetables ([¼ or ½] cup) and [½, 1] serving of fruit ([¼ or ½] cup)," and "Dietary guidelines recommend 2½ cups of a variety of vegetables and 2 cups of fruit per day for a 2,000 calorie diet."

56.     These statements and images led Ms. Mistler to believe that drinking the products would provide similar nutritional benefits as consuming whole fruits and vegetables and that drinking the Juice Blends would be beneficial rather than detrimental to health. These representations and images expressly stating or implying that the products provide the same nutritional benefits as whole fruits and vegetables

14

and characterizing the healthfulness of the Juice Blends, were and are deceptive. This is because scientific evidence demonstrates that, in contrast to consuming whole fruits and vegetables which has protective and beneficial health effects, consuming fruit juice is detrimental to health.

57.    When purchasing the Juice Blends, Plaintiffs were seeking beverages that were healthy to consume, would provide similar nutritional benefits as eating a similar number of servings of fruit and vegetables, and would benefit health.

58.    Because scientific evidence demonstrates that, unlike eating whole fruits and vegetables, which protects against disease, drinking juice increases risk of type 2 diabetes, obesity, cardiovascular disease and all-cause mortality (among other diseases), Campbell's representations regarding the number of servings of vegetables and fruit that the Juice Blends provide, use of pictures of fresh fruits and vegetables, and characterization of the Juice Blends as providing a "Boost to Your Morning Nutrition" are false, or at least highly misleading.

59.    Plaintiffs are not nutritionists, food experts, or food scientists, but rather lay consumers who did not have the specialized knowledge that Campbell had regarding the processing of the Juice Blends and how that processing impacted the nutritional characteristics of the Juice Blends, particularly in comparison to whole fruits and vegetables. At the time of purchase, Plaintiffs were unaware of the extent to which the health impact of consuming juice differed from that of consuming whole fruits and vegetables, or that the consumption of juice adversely affects blood cholesterol levels and increases risk of heart disease, diabetes, and other morbidity.

60.    The average and reasonable consumer is unaware of the extent to which the health impact of consuming juice differs from that of consuming whole fruits and vegetables, or that the consumption of juice adversely affects blood cholesterol levels and increases risk of heart disease, diabetes, and other morbidity.

61.    Plaintiffs acted reasonably in relying on Campbell's wellness labeling claims and serving statements and fruit and vegetable images, which Campbell intentionally placed on the Juice Blends' labeling with the intent to induce average consumers into purchasing the Juice Blends.

62.    Plaintiffs would not have purchased the Juice Blends or would not have been willing to pay as much if they knew that the challenged labeling claims and images were false and misleading in that the

Juice Blends do not provide similar nutritional benefits as a "serving of vegetables" or "fruit," and actually increase risk of disease rather than protect against disease.

63.     The Juice Blends would have cost less absent the false and misleading statements and omissions.

64.     Plaintiffs paid more for the Juice Blends, and would only have been willing to pay less, or unwilling to purchase the Juice Blends at all, absent the false and misleading labeling complained of herein.

65.     Plaintiffs would not have purchased the Juice Blends if they had known that the Juice Blends are misbranded pursuant to California and FDA regulations or that their claims were false or misleading.

66.     Plaintiffs and the Class lost money as a result of Campbell's deceptive claims, omissions, and practices in that they did not receive what they paid for when purchasing the Juice Blends.

67.     Plaintiffs continue to desire to purchase healthy beverages and continue to see the Juice Blends at stores when they shop.

68.     Plaintiffs would purchase the Juice Blends in the future if they were in fact healthy as represented, but unless Campbell is enjoined in the manner Plaintiffs request, they may not be able to reasonably determine whether the Juice Blends have been reformulated to conform to the misleading claims or whether Campbell has continued to misrepresent the healthfulness of the Juice Blends.

69.     Plaintiffs would likely purchase the Juice Blends if they could trust that the challenged representations and images were not false or misleading, but absent an injunction, Plaintiffs will be unable to trust the representations on the Juice Blends when they encounter them in the marketplace.

70.     Plaintiffs' substantive right to a marketplace free of fraud, where they are entitled to rely on representations such as those made by Campbell with confidence, continues to be violated every time Plaintiffs are exposed to the misleading labeling claims.

71.     Accordingly, Plaintiffs' legal remedies are inadequate to prevent these future injuries.

## CLASS ACTION ALLEGATIONS

72.     While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to represent a class of all persons in California who, at any time from four years preceding the date of the filing of this Complaint to the time a class is notified (the "Class Period"), purchased, for personal or household

16

use, and not for resale or distribution, any of the Juice Blends (the "Class").

73.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

74.     Questions of law and fact common to Plaintiffs and the Class include:

a.     whether Defendant communicated a message through the challenged labeling of the Juice Blends regarding their healthfulness, particularly as compared to the whole fruits and vegetables from which they are extracted;

b.     whether that message was material;

c.     whether the challenged claims and images identified herein are false, misleading, or likely to deceive a reasonable consumer;

d.     whether Defendant's conduct violates public policy;

e.     whether Defendant's conduct constitutes violations of the laws asserted herein;

f.     whether Defendant engaged in false or misleading advertising;

g.     whether Defendant breached warranties;

h.     whether Plaintiffs and Class Members are entitled to declaratory and injunctive relief; and

i.     whether Plaintiffs and Class Members are entitled to actual damages, restitution, punitive damages, attorneys' fees and costs, injunctive, and the amount of each or any other relief.

75.     These common questions of law and fact predominate over questions that affect only individual Class Members.

76.     Plaintiffs' claims are typical of Class Members' claims because they are based on the same underlying conduct by Defendant. Specifically, all Class Members, including Plaintiffs, were subjected to the same misleading and deceptive conduct when they purchased the challenged Juice Blends and suffered economic injury because the Juice Blends are misrepresented. Absent Defendant's business practice of deceptively and unlawfully labeling its Juice Blends, Plaintiffs and Class Members would not have purchased the Juice Blends or only would have been willing to pay less.

77.     Plaintiffs will fairly and adequately represent and protect the interests of the Class, have no

17

interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action litigation.

78.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

79.     Questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

80.     Defendant has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

81.     As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.***

82.     Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

83.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

84.     The acts, omissions, misrepresentations, practices, and non-disclosures of Campbell as alleged herein constitute business acts and practices.

### Fraudulent

85.     A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying an objective reasonable consumer test.

86.     As set forth herein, Campbell's claims and omissions relating to the Juice Blends are likely to deceive reasonable consumers and the public.

### Unlawful

87.     The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*

- The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; and

- The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq.*

## **Unfair**

88.     Campbell's conduct with respect to the labeling, advertising, and sale of the Juice Blends was unfair because Campbell's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

89.     Campbell's conduct with respect to the labeling, advertising, and sale of the Juice Blends was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

90.     Campbell's conduct with respect to the labeling, advertising, and sale of the Juice Blends was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided. Specifically, the increase in profits obtained by Campbell's through the misleading labeling does not outweigh the harm to Class Members who were deceived into purchasing the Juice Blends believing they were healthy when in fact they are of the type that is likely to detriment health.

91.     Campbell profited from the sale of the falsely, deceptively, and unlawfully advertised Juice Blends to unwary consumers.

92.     Plaintiffs and Class Members are likely to continue to be damaged by Campbell's deceptive trade practices, because Campbell continues to disseminate misleading information. Thus, injunctive relief enjoining Campbell's deceptive practices is proper.

93.     Campbell's conduct caused and continues to cause substantial injury to Plaintiffs and other Class Members. Plaintiffs have suffered injury in fact as a result of Campbell's unlawful conduct.

94.     In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Campbell

19

from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

95.     Plaintiffs and the Class also seek an order for the restitution of all monies from the sale of the Juice Blends, which were unjustly acquired through acts of unlawful competition.

96.     Because Plaintiffs' claims under the "unfair" prong of the UCL sweep more broadly than their claims under the FAL, CLRA, or UCL's "fraudulent" prong, Plaintiffs' legal remedies are inadequate to fully compensate Plaintiffs for all of Campbell's challenged behavior.

97.     Because the Court has broad discretion to award restitution under the UCL and could, when assessing restitution under the UCL, apply a standard different than that applied to assessing damages under the CLRA or commercial code (for Plaintiffs' breach of warranty claims), and restitution is not limited to returning to Plaintiffs and class members monies in which they have an interest, but more broadly serves to deter the offender and others from future violations, the legal remedies available under the CLRA and commercial code are more limited than the equitable remedies available under the UCL, and are therefore inadequate.

## SECOND CAUSE OF ACTION

### Violations of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*

98.     Plaintiffs realleges and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

99.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

100.     It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

101.     As alleged herein, the advertisements, labeling, policies, acts, and practices of Campbell relating to the Juice Blends misled consumers acting reasonably as to the healthfulness of the Juice Blends,

particularly as compared to the whole fruits and vegetables from which the Juice Blends are extracted.

102.    Plaintiffs suffered injury in fact as a result of Campbell' actions as set forth herein because Plaintiffs purchased the Juice Blends in reliance on Campbell' false and misleading marketing claims stating or suggesting that the Juice Blends, among other things, are healthful and provide the same nutritional benefits as consuming the whole fruits and vegetables from which the Juice Blends are extracted.

103.    Campbell' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Campbell has advertised the Juice Blends in a manner that is untrue and misleading, which Campbell knew or reasonably should have known, and omitted material information from the Juice Blends' labeling.

104.    Campbell profited from the sale of the falsely and deceptively advertised Juice Blends to unwary consumers.

105.    As a result, Plaintiffs, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Campbell was unjustly enriched.

106.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiffs, on behalf of themselves and the Class, seek an order enjoining Campbell from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

107.    Because the Court has broad discretion to award restitution under the FAL and could, when assessing restitution under the FAL, apply a standard different than that applied to assessing damages under the CLRA or commercial code (for Plaintiffs' breach of warranty claims), and restitution is not limited to returning to Plaintiffs and class members monies in which they have an interest, but more broadly serves to deter the offender and others from future violations, the legal remedies available under the CLRA and commercial code are more limited than the equitable remedies available under the FAL, and are therefore inadequate.

### THIRD CAUSE OF ACTION

### Violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

108.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

109.    The CLRA prohibits deceptive practices in connection with the conduct of a business that

provides goods, property, or services primarily for personal, family, or household purposes.

110.    Campbell's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Juice Blends for personal, family, or household purposes by Plaintiffs and Class Members, and violated and continue to violate the following sections of the CLRA:

       a.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

       b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

       c.    § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

       d.    § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

111.    Campbell profited from the sale of the falsely, deceptively, and unlawfully advertised Juice Blends to unwary consumers.

112.    Campbell's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

113.    Pursuant to California Civil Code § 1782, more than 30 days before filing this lawsuit, Plaintiffs sent written notice of their claims and Campbell's particular violations of the Act to Campbell by certified mail, return receipt requested, but Campbell has failed to implement remedial measures.

114.    As a result, Plaintiffs and the Class have suffered harm, and therefore seek (a) actual damages resulting from purchases of the Juice Blends sold throughout the Class Period to all Class Members, (b) punitive damages, (c) injunctive relief in the form of modified advertising and a corrective advertising plan, (d) restitution, and (e) attorneys' fees and costs.  *See* Cal. Civ. Code § 1782(d).

115.    In compliance with Cal. Civ. Code § 1780(d), an affidavit of venue is filed concurrently herewith.

### FOURTH CAUSE OF ACTION

### Breaches of Express Warranties, Cal. Com. Code § 2313(1)

116.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth

in full herein.

117.     Through the Juice Blends' labeling, Campbell made affirmations of fact or promises, or description of goods, that, *inter alia*, the Juice Blends are beneficial to health and provide the same nutritional benefits as the whole fruits and vegetables from which they are extracted, through the statements "Boost Your Morning Nutrition," "Healthy Greens," "1 serving of veggies," "1 serving of fruit," "[1, 1½, or 2] combined servings of veggies and fruit," "8 fl. oz. has 1 serving of vegetables (1/2 cup)," "8 fl. oz. has [½ or 1] serving of vegetables ([¼ or ½] cup) and [½, 1] serving of fruit ([¼ or ½] cup)," and "Dietary guidelines recommend 2½ cups of a variety of vegetables and 2 cups of fruit per day for a 2,000 calorie diet."

118.     These representations were "part of the basis of the bargain," in that Plaintiffs and the Class purchased the Juice Blends in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

119.     Campbell breached its express warranties by selling Juice Blends that are not healthful and do not provide the same protective health benefits as whole fruits and vegetables, but rather are likely to increase the risk of chronic diseases, and harm rather than promote bodily health.

120.     That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiffs and Class Members paid for the Juice Blends.

121.     As a result, Plaintiffs seek, on behalf of themselves and other Class Members, their actual damages arising as a result of Campbell's breaches of express warranty, including, without limitation, expectation damages.

## PRAYER FOR RELIEF

122.     Wherefore, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, pray for judgment against Campbell as to each and every cause of action, and the following remedies:

a.     An Order declaring this action to be a proper class action, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' undersigned counsel as Class Counsel;

b.     An Order requiring Campbell to bear the cost of Class Notice;

c.     An Order compelling Campbell to conduct a corrective advertising campaign;

d.     An Order compelling Campbell to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending Juice Blends;

e.      An Order requiring Campbell to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

f.      An Order requiring Campbell to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

g.      An Order requiring Campbell to pay compensatory damages and punitive damages as permitted by law;

h.      An award of attorneys' fees and costs; and

i.      Any other and further relief that Court deems necessary, just, or proper.

## JURY DEMAND

123.    Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: June 21, 2022

/s/ Melanie Persinger
**FITZGERALD JOSEPH LLP**
JACK FITZGERALD
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiffs***

*Banta Yoshida et al. v. Campbell Soup Co.*
FIRST AMENDED COMPLAINT