1    David T. Biderman, Bar No. 101577
     DBiderman@perkinscoie.com
2    PERKINS COIE LLP
     505 Howard Street, Suite 1000
3    San Francisco, California 94105
     Telephone: 415.344.7000
4    Facsimile:  415.344.7050

5    Charles C. Sipos, *Pro Hac Vice*
     CSipos@perkinscoie.com
6    PERKINS COIE LLP
     1201 Third Avenue, Suite 4900
7    Seattle, Washington 98101
     Telephone: 206.359.8000
8    Facsimile:  206.359.9000

9    Attorneys for Defendant Campbell
     Soup Company
10

11                      UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                        SAN FRANCISCO DIVISION

14

15   KYLE BANTA YOSHIDA, ANTHONY          Case No. 3:21-cv-09458-JD
16   MANCUSO, and ASHLEY MISTLER, on
     behalf of themselves, those similarly situated,   DEFENDANT CAMPBELL SOUP
17   and the general public;              COMPANY'S NOTICE OF MOTION AND
                                          MOTION TO DISMISS SECOND
18            Plaintiffs,                 AMENDED COMPLAINT

19        v.                             [Fed. R. Civ. P. 12(b)(1) & 12(b)(6)]

20   CAMPBELL SOUP COMPANY,              Date:        March 23, 2023
21            Defendant.                 Time:        10:00 a.m. PT
                                         Courtroom:   Courtroom 11, 19th Floor
22                                       Judge:       Hon. James Donato

23

24

25

26

27

28

1

2          **<u>NOTICE OF MOTION & MOTION</u>**

3          TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

4          PLEASE TAKE NOTICE that on March 23, 2023, at 10:00 a.m., or as soon thereafter as

5   the matter may be heard in the courtroom of the Honorable James Donato, located at 450 Golden

6   Gate Avenue, San Francisco, CA 94102, Courtroom 11 – 19th Floor, or in Judge Donato's virtual

7   courtroom, Defendant Campbell Soup Company will and hereby does move pursuant to Federal

8   Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiffs' Second Amended Complaint

9   ("SAC").

10          This motion is made on the following grounds: (1) the SAC fails to allege a theory of

11  deception that is plausible or that satisfies the applicable "reasonable consumer" standard; (2) the

12  SAC is expressly preempted by federal law; (3) Plaintiffs are unentitled to the SAC's requested

13  form of equitable relief; and (4) the SAC should be dismissed with prejudice because of the futility

14  of further amendment and Plaintiffs' two prior opportunities to amend.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ........................................................................................................1

II.    FACTUAL BACKGROUND ......................................................................................2

       A.     The Court Dismissed Plaintiffs' Two Prior Complaints as Implausible. ...............2

       B.     The SAC Does Not Provide Any Survey Data as the Court Suggested. ...............3

III.   STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(A)(3)) ..................................6

IV.    STANDARD OF REVIEW ..........................................................................................6

V.     ARGUMENT ...............................................................................................................6

       A.     No Reasonable Consumer is Misled by the V8 Juices' Labels. .........................6

       B.     Plaintiffs' Claims are Expressly Preempted. ....................................................11

       C.     Plaintiffs Are Not Entitled To Their Requested Equitable Remedies. ...............13

       D.     The SAC Should be Dismissed with Prejudice. ................................................14

VI.    CONCLUSION ...........................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ackerman v. Coca-Cola Co.*,
2010 WL 2925955 (E.D.N.Y. July 21, 2010) ....................................................... 13

*Altes v. Bulletproof 360, Inc.*,
2020 WL 1062878 (C.D. Cal. Mar. 5, 2020) ......................................................... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................ 6

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ........................................................................ 7, 8, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................ 6

*Brodsky v. Apple, Inc.*,
445 F.Supp.3d 110 (N.D. Cal. 2020) ................................................................. 14

*Cattaneo v. Am. Airlines, Inc.*,
2015 WL 5610017 (N.D. Cal. Sept. 24, 2015) .................................................. 14

*Clark v. Perfect Bar LLC*,
816 F. App'x 141 (9th Cir. 2020) ................................................................. 11, 12

*Cleveland v. Campbell Soup Co.*,
2022 WL 17835514, -- F.Supp.3d -- (N.D. Cal. Dec. 21, 2022) ................ 1, 7, 8, 9

*Collette v. Wyeth Pharm.*,
2020 WL 3414701 (Donato, J.) (N.D. Cal. Jun. 22, 2020) ................................ 14

*Davidson v. Kimberly-Clark Corp.*,
873 F.3d 1103 (9th Cir. 2017), *as amended on denial of reh'g en banc*, 889
F.3d 956 (9th Cir. 2018) ..................................................................................... 13

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ............................................................................... 6

*Hadley v. Kellogg Sales Co.*,
273 F. Supp. 3d 1052 (N.D. Cal. 2017) .............................................................. 12

*Johnson v. Trumpet Behav. Health, LLC*,
2022 WL 74163 (N.D. Cal. Jan. 7, 2022) .......................................................... 14

1

2

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

3

4

*Kennard v. Kellogg Sales Co.*,
2022 WL 4241659 (N.D. Cal. Sept. 14, 2022)..................................................................7

5

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .........................................................................................6

6

7

*Marek v. Molson Coors Beverage Co.*,
580 F.Supp.3d 848 (N.D. Cal. 2022).............................................................................13

8

9

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020)........................................................................................11

10

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ....................................................................................6, 9, 10

11

12

*Painter v. Blue Diamond Growers*,
757 Fed.App'x 517 (9th Cir. 2018)................................................................................11

13

14

*Prescott v. Nestle USA, Inc.*,
597 F.Supp.3d 1377 (N.D. Cal. 2022)............................................................................7

15

*Puri v. Costco Wholesale Corp.*,
2021 WL 6000078 (N.D. Cal. Dec. 20, 2021) ...............................................................7

16

17

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........................................................................................14

18

19

*Takano v. Proctor & Gamble Co.*,
2018 WL 5304817 (E.D. Cal. Oct. 24, 2018) .................................................................9

20

*Truxel v. General Mills Sales, Inc.*,
2019 WL 3940956 (N.D. Cal. Aug. 13, 2019)..............................................................11

21

22

*Werdebaugh v. Blue Diamond Growers*,
2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) ..............................................................14

23

24

*Williams v. Cal.*,
764 F.3d 1002 (9th Cir. 2014)........................................................................................6

25

*Yu v. Dr Pepper Snapple Grp., Inc.*,
2020 WL 5910071 (N.D. Cal. Oct. 6, 2020)....................................................7, 8, 11, 14

26

**STATUTES**

27

7 U.S.C. § 341(a)(1)(2) ..................................................................................................13

28

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

7 U.S.C. § 5301(2) ............................................................................................... 12

21 U.S.C. § 343-1, et seq. ..................................................................................... 11

Cal. Bus. & Prof. Code § 17200 ............................................................... 5, 6, 9, 14

Cal. Bus. & Prof. Code § 17500 ............................................................... 5, 6, 9, 14

Cal. Civ. Code § 1750 .............................................................................. 5, 6, 9, 14

**RULES**

Fed. R. Civ. P. 12 ............................................................................................. 7, 11

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 6

Fed. R. Civ. P. 23(b)(2) ........................................................................................... 5

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 5

L.R. 7-4(A)(3) ......................................................................................................... 6

**REGULATIONS**

21 C.F.R. § 101.60(c) ........................................................................................... 12

21 C.F.R. § 101.65(d) ...................................................................................... 5, 11

21 C.F.R. § 101.65(d)(2)(F) ........................................................................... 10, 12

21 C.F.R. § 104.20(a) ....................................................................................... 5, 13

59 Fed. Reg. 24,232 (May 10, 1994) ................................................................... 12

1

## I.    INTRODUCTION

2      Plaintiffs' Second Amended Complaint ("SAC") fails for the same fundamental reason as

3  their prior pleadings: The labels of Campbell's V8 Juices are not misleading. Any "reasonable

4  consumer" knows that juice is not the same thing as whole fruits and vegetables. And any

5  "reasonable consumer" can plainly see on the V8 Juices' labels the products' complete nutritional

6  information and make an informed decision on how to incorporate the V8 Juices into their diet.

7  These are immutable facts Plaintiffs simply cannot plead around.

8      These two principles—that the labels appropriately communicate the V8 Juices' nutritional

9  content, and that reasonable consumers understand that the basic nature of the product is that its

10  juice, not a raw fruit or vegetable—formed the basis of this Court's two prior dismissal orders. So,

11  when the Court allowed Plaintiffs to make a third and final attempt to state a cognizable claim, it

12  suggested narrow grounds on which Plaintiffs might possibly salvage their claims. Plaintiffs could

13  attempt to amend with survey evidence examining the V8 Juices' labels that might purport to show

14  that their interpretation of those labels is plausible. *See* Second Dismissal Order (Dkt. No. 57) at 3.

15      Plaintiffs did not follow the Court's guidance. Rather than including the survey information

16  Plaintiffs were directed to provide, the SAC instead proffers unrelated generic third-party data that

17  has nothing whatsoever to do with how consumers interpret V8 Juices' labels. Instead, these

18  "surveys" concern unrelated matters like "all natural" claims, labeling for hypothetical breakfast

19  cereals, or how consumers might come to understand the amount of calories in a serving of ice

20  cream. There is on point authority that dispenses with this sort of irrelevant information: Namely,

21  this Court's recent decision in *Cleveland v. Campbell Soup Co.*, where it held that "generic

22  commentaries about sugar consumption and health concerns….does not make it any more plausible

23  that a consumer would be deceived [by defendant's labeling] in that circumstance." 2022 WL

24  17835514, at *2, -- F.Supp.3d -- (N.D. Cal. Dec. 21, 2022). That analysis applies here, too.

25      Nothing else in the SAC fares any better. The other new allegations pertain to non-label

26  statements made in websites or print advertisements, none of which aids the plausibility of

27  Plaintiffs' twice-repudiated theory of deception. And, in all events, none of the Plaintiffs even relied

28  on this information.

Likewise, the Plaintiffs now point to a statement on a more recent version of V8 Juices' labels that they are a "A Healthy & Delicious Plant-Powered Blend of Vegetables & Fruit." This statement, like the claims challenged in earlier complaints, is true. The V8 Juices are indisputably made from the juices of fruits and vegetables. Moreover, V8 Juices' labels bearing this statement also still have plain disclosures of their nutritional content. So, labels bearing this statement are equally non-deceptive. In fact, Plaintiffs' inclusion of this statement in the SAC only weakens their case, because the use of the word "healthy" strengthens Campbell's existing preemption defense tied to the use of that term. The V8 Juices qualify under federal regulations to bear this "healthy" statement, precisely because the products have beneficial nutrients and vitamins, and contain no disqualifying ingredients.

Plaintiffs' third complaint should be their last. The SAC should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

### A.    The Court Dismissed Plaintiffs' Two Prior Complaints as Implausible.

The Second Amended Complaint ("SAC") is Plaintiffs' third attempt to state a cognizable claim, after their first two complaints were dismissed in full as implausible and for failure to meet the governing "reasonable consumer" standard. *See* Dkt. No. 40 (May 27, 2022) ("First Dismissal Order") and No. 57 (Dec. 2, 2022) ("Second Dismissal Order").

Plaintiffs' initial Complaint was tied to a theory that the V8 Juices were interpreted by consumers, particularly the phrase "Boost Your Morning Nutrition," to misleadingly communicate that the products are healthy. *See* Compl. ¶¶ 1, 76–78, 93 (Dkt. No. 1). Plaintiffs claimed this message of healthfulness was misleading in light of the V8 Juices' (naturally occurring) sugar content. *Id.* ¶¶ 1, 76. Shortly after oral argument, the Court granted Campbell's first motion to dismiss in full. In the First Dismissal Order, this Court agreed with Campbell that the V8 Juices' labels are not misleading to a "reasonable consumer," noting that the labels disclose both the Juices' sugar content and all other relevant nutritional information to allow consumers "to decide whether the juices are a net benefit or detriment to personal health." First Dismissal Order at 1–2.

Principally because of the liberal standards that apply to initial complaints, the Court gave Plaintiffs a chance to amend. *Id.* The resulting First Amended Complaint ("FAC") was, in many

respects, unchanged from the first Complaint; it remained fundamentally tied to an assertion that the V8 Juices' labels deceived consumers as to nutrition, relying on sugar content as the lynchpin for that theory. *See* Campbell Second Mot. to Dismiss (Dkt. No. 48) (Jul. 26, 2022) at 1–2.

What was superficially new about the FAC were allegations that consumers would somehow be confused into thinking that V8 Juices are nutritionally identical to "whole fruits and vegetables." FAC ¶¶ 14, 18, 20, 21, 33, 34, 50, 53, 56, 59, 60. The Court rejected this theory, too, explaining to Plaintiffs once again that the V8 Juices' labels disclose their "vitamin and nutrient content, which plainly state exactly the nutritional values the consumer would get." Second Dismissal Order at 2. In doing so, the Court rejected Plaintiffs' underlying fruit and vegetable equivalence theory, holding that "a reasonable consumer would not believe that a container of processed juice sold on a grocery's dry goods shelf would provide the same benefits as eating a fresh and unprocessed fruit or vegetable." *Id*.

In its Second Dismissal Order, the Court observed that "a dismissal of the case would be permissible at this time." *Id.* at 3. But the Court nonetheless gave Plaintiffs "one final opportunity" to amend, although with discrete and explicit suggestions on the nature of any amendment. *Id.*

Specifically, the Court explained that in some circumstances "relevant survey data" can help support a complaint's plausibility where it goes to deception as to a "product's labels and representations." *Id.* So, fairly read, Plaintiffs were on notice that any survey and resulting amendment should go to the alleged deceptiveness of V8 Juices' labels themselves. *Id.* (informing Plaintiffs that any amended complaint must be "consistent with [the Court's] order" on this point).

**B.     The SAC Does Not Provide Any Survey Data as the Court Suggested.**

Plaintiffs' SAC does not comport with this Court's suggestions on the nature of the permitted amendment. Instead, the SAC recycles theories this Court has already rejected, points to aspects of the V8 Juices' labels already considered in prior pleadings, and fails to provide any survey evidence consistent with the Second Dismissal Order.

*First*, the SAC is in most material ways a recapitulation of theories and allegations already rejected. Many of the SAC's new allegations go to the supposed health harms of sugar, alleging as they did in the first Complaint that the sugar content of V8 Juices renders them unhealthy and thus

makes the labels deceptive. *Compare* SAC ¶¶ 32–34 (alleging that the sugar content in V8 Juices makes them "unhealthy") with Compl. ¶¶ 85, 88, 91 (same). The Court rejected this theory in the First Dismissal Order at 1 ("No reasonable consumer would be misled by the challenged phrases because the sugar content is plainly stated on the labels, along with disclosures of beneficial vitamin and nutrient content.") Similarly, the SAC once again alleges that the process of processing raw whole vegetables and fruit to make them into juice means that the resulting product has "negative health effects." Compare SAC ¶¶ 36–39 ("a piece of fruit, while perhaps a healthy food choice when it is whole, is transformed into a decidedly *un*healthy food once processed into juice") with FAC ¶¶ 24, 59 (same). The Court dismissed this theory as implausible, too. *See* Second Dismissal Order at 2 ("[A] reasonable consumer would not believe that a container of processed juice sole on a grocery's dry good shelf would provide the same benefits as eating a fresh and unprocessed fruit or vegetable.")

*Second*, the SAC does not contain any "relevant survey data," Second Dismissal Order at 2, concerning the labels of V8 Juices or how consumers interpret them. In other words, the SAC contains no new allegations of fact to indicate that any consumer anywhere interpreted the labels in the manner Plaintiffs claim. In the place of the survey data the Court suggested it might consider, is generic information tangentially related to the issue of food labeling. *See* SAC ¶¶ 76–87. Among the "data" included in the SAC are references to surveys concerning the meaning of an "all natural" claim (¶ 77), information on how consumers interpreted hypothetically labeled breakfast cereals (¶ 80), how the statements "whole grain" and "naturally flavored" are sometimes interpreted (¶ 82), or what consumers do or do not understand when it comes to the number of calories in ice cream (¶ 87). On the subject of juice, the SAC cites a survey that affirmatively undermines their theory, by pointing to a study from 2016 indicating that 92% of parents consider juice "somewhat or very healthy," SAC ¶ 97, a result that is corroborated by FDA regulations (which permit V8 Juices to carry an affirmative "healthy" claim) and USDA Guidelines (which deem juice part of a healthy diet and treat it as a "serving" of fruit or vegetables). *See* Campbell Second Mot. to Dismiss, Dkt. No. 48 (Jul. 26, 2022) at 7–9.

*Third*, the SAC points to additional iterations of V8 Juices' labels, contending that

consumers are deceived into thinking that the V8 Juices "are a healthy alternative to whole fruit and vegetables." SAC ¶¶ 15, 19. Most of what is alleged as to these labels is repetitive of prior complaints, pointing out that the labels (truthfully) represent that the V8 Juices are made from fruits and vegetables and that, in keeping with express United States Department of Agriculture ("USDA") Guidelines, constitute "servings" of fruits and vegetables under those Guidelines. *See* SAC ¶¶ 17, 20; *see also* Campbell Second Mot. to Dismiss at 9–10. Plaintiffs also now point to a statement on the rear panel of the labels that the V8 Juices are "A Healthy & Delicious Plant-Powered Blend of Vegetables & Fruit." SAC ¶ 15. This true statement (the V8 Juices are undisputedly made from the juice of fruits and vegetables, which are plants) is expressly permitted on the V8 Juices' labels by federal regulations regarding "healthy" claims, because they contain significant vitamin content and have none of the nutrients that FDA regulations limit for foods bearing a "healthy" claim. *See* Campbell First Motion to Dismiss ("Mot. to Dismiss"), Dkt. No. 24 (Feb. 17, 2022) at 1–2, 11–13 (citing 21 C.F.R. § 101.65(d)).

The SAC separately points to certain statements on Campbell websites or in print advertisements regarding juice, some of which do not even concern the V8 Juices at issue. SAC ¶¶ 49–55. More pertinently, none of the Plaintiffs allege they even saw, much less relied on, this non-label information. *Id.* ¶¶ 103, 106, 109 (alleging only reliance on labeling claims).

Finally, taking up an issue that Plaintiffs unsuccessfully raised in the second round of dismissal briefing, Dkt. No. 50 at 11–12 (Aug. 16, 2022), the SAC makes factual allegations about the V8 Juices' purported non-compliance with the FDA's Fortification Policy in that they contain Vitamins A and C. *See* SAC ¶ 41(citing 21 C.F.R. § 104.20(a)). The SAC's "unlawful" claim does not, however, expressly allege non-compliance with the Policy, which is in all events is a policy directed at indiscriminate fortification of "snack foods such as candies and carbonated beverages," and makes no mention of juice whatsoever. *See* 21 C.F.R. § 104.20(a).

The SAC asserts causes of action as prior complaints, for violation of the Cal. Bus. & Prof. Code § 17200 ("UCL"), § 17500 (FAL), Cal. Civ. Code § 1750 ("CLRA"), and for breach of express warranty. SAC ¶¶ 136–175. Plaintiffs seek certification of a class of California consumers under Fed. R. Civ. P. 23(b)(3) and (b)(2), seeking damages, equitable monetary remedies, and

1     injunctive relief. *Id.* ¶ 176 ("Prayer for Relief").

2                     **III.     STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(A)(3))**

3          1.     Whether Plaintiffs have plausibly alleged that the V8 Juices' labels would mislead

4     a "reasonable consumer."

5          2.     Whether Plaintiffs' claims are expressly preempted.

6          3.     Whether Plaintiffs' requests for injunctive and equitable monetary relief are barred.

7          4.     Whether the SAC should now be dismissed with prejudice as stated in this Court's

8     Second Dismissal Order.

9                              **IV.     STANDARD OF REVIEW**

10         "[Rule 12(b)(6) requires that a complaint] . . . contain factual allegations sufficient to 'state

11    a claim to relief that is plausible on its face.'" *Williams v. Cal.*, 764 F.3d 1002, 1007 (9th Cir. 2014)

12    (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he court [is not] required to

13    accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

14    unreasonable inferences." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir.

15    2018). Whether a complaint states a plausible claim is a "context-specific task that requires the

16    reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S.

17    662, 679 (2009). A motion to dismiss, under Federal Rule of Civil Procedure 12(b)(1), challenges

18    the Court's subject-matter jurisdiction, including plaintiff's standing. Fed. R. Civ. P. 12(b)(1).

19                                  **V.     ARGUMENT**

20         **A.     No Reasonable Consumer is Misled by the V8 Juices' Labels.**

21         The SAC's UCL, FAL and CLRA claims are subject to review under the "reasonable

22    consumer" standard. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021). To meet this

23    standard, a pleading must plausibly allege "that a significant portion of the general consuming

24    public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* at

25    882. Implausible theories of deception necessarily fail the "reasonable consumer" test. First

26    Dismissal Order at 1; Second Dismissal Order at 2; *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th

27    Cir. 2016). Plaintiffs fail to satisfy the "reasonable consumer" standard as to the narrow issue on

28    which the court granted leave: They did not even attempt to offer survey evidence that would

purport to make their theory about the supposed deceptiveness of the V8 Juices' labels plausible. And the remainder of the SAC is just as defective, offering legally irrelevant allegations about statements the Plaintiffs never saw, and otherwise advancing theories this Court has already held are implausible.

*First*, while the Ninth Circuit has indicated that in some instances survey evidence going to the interpretation of a disputed label is cognizable at Rule 12, the baseline rule is that a survey cannot make an otherwise implausible theory of deception plausible. *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019) ("the survey cannot, on its own, salvage [plaintiff's] claim…the survey does not shift the prevailing reasonable understanding of what reasonable consumers understand…"). So, even as to surveys examining the meaning of the label at issue in the litigation, *Becerra* is consistently applied to hold that such surveys cannot stave off dismissal of an otherwise implausible claim. *Id.* at 1231; *accord Prescott v. Nestle USA, Inc.*, 597 F.Supp.3d 1377, 1382 (N.D. Cal. 2022) (rejecting survey evidence regarding disputed label as insufficient to support plausibility of otherwise implausible theory); *Puri v. Costco Wholesale Corp.*, 2021 WL 6000078, at *7 (N.D. Cal. Dec. 20, 2021) ("Even if [plaintiff] had provided sufficient factual detail concerning the survey, otherwise facially implausible consumer deception claims cannot be redeemed by survey allegations alone."); *Kennard v. Kellogg Sales Co.*, 2022 WL 4241659, at *4 (N.D. Cal. Sept. 14, 2022) ("I agree that the survey cannot save plaintiff's claim given the facial deficiencies, as well as the lack of any support for plaintiff's preferred definition of VEGGIE on the Products' packaging.").

When a plaintiff fails to conduct a survey regarding the disputed label, the rule is even stricter: Courts consistently hold that generic non-label surveys are incapable of resuscitating an implausible theory under the "reasonable consumer" standard. *See Cleveland v. Campbell Soup Co.*, 2022 WL 17835514, at *2, -- F.Supp.3d -- (N.D. Cal. Dec. 21, 2022) ("[G]eneric commentaries about sugar consumption and health concerns….does not make it any more plausible that a consumer would be deceived [by defendant's labeling] in that circumstance."); *Yu v. Dr Pepper Snapple Grp., Inc.*, 2020 WL 5910071, at *7 (N.D. Cal. Oct. 6, 2020) ("If the survey in *Cheslow* and the survey in *Becerra*—which was created specifically for the product in question, diet soda—

wasn't enough to bolster a plaintiff's claim into the realm of plausibility, these two generic surveys aren't enough for Plaintiff here.").

This Court recently considered this precise issue in *Cleveland*, whether generic survey information aids plausibility, in a case concerning alleged misleading food labeling. 2022 WL 17835514, at \*\*1–3. Plaintiffs in *Cleveland* alleged consumers would be misled by a "0g Sugar" statement on the labels of crackers into believing that the product was low calorie, even though the remainder of the label plainly stated the product's calories per serving. *Id*. at \*1. The plaintiffs had no survey evidence that considered the content of the disputed labels, and instead offered surveys that were "generic commentaries about sugar consumption and health concerns," including survey information that plaintiffs claimed showed consumers could be confused by claims relating to sugar content. *Id*. at \*3. This Court, relying on *Becerra*, held that these sorts of generic "surveys and studies" do not make an otherwise implausible theory of deception plausible. *Id*. ("As in *Becerra*, it is difficult to tell what questions the survey asked to reach its conclusions, and more importantly, the survey cannot on its own, salvage plaintiffs' claims.") (internal quotation marks omitted).

*Cleveland* applies in full here. Plaintiffs' "survey" evidence is completely disconnected from the substance of the V8 Juices' labels, thus effectively ignoring this Court's suggestion on that point. Second Dismissal Order at 3. Instead, the SAC contains only generic information about how consumers sometimes interpret different labels ("whole grains"), claims ("all natural"), or products (ice cream and cereal). SAC ¶¶ 77, 80, 82, 87. This does nothing to aid the SAC's plausibility. *Cleveland*, 2022 WL 17835514, at \*2; *Yu*, 2020 WL 5910071, at \*7. Put differently, nothing about how some non-party survey participant might view the amount of sugar in ice cream suggests that any "reasonable consumer" would view the labels of V8 Juices and fail to understand the products' nutritional benefits. *Cleveland*, 2022 WL 17835514, at \*2. Similarly, the fact that in 2017 some survey participants drew conclusions about hypothetical sugar labeling for breakfast cereal (SAC ¶ 80) does not make it any more plausible that a "reasonable consumer" might think that V8 Juices are nutritionally identical to raw fruits and vegetables. Second Dismissal Order at 2. To the extent the SAC's generic survey information says anything remotely relevant, it corroborates that some consumers understand 100% juice the way that the USDA and FDA do—that it is

3:21-CV-09458-JD
MOTION TO DISMISS SECOND
AMENDED COMPLAINT

1  something that can be properly incorporated into a healthy diet. SAC ¶ 97; Campbell Second Mot.

2  to Dismiss at 5, 9–10.[1]

3       **Second**, the SAC points to various statements on Campbell websites or in correspondence

4  with the FDA to suggest that Campbell has somehow retroactively endorsed Plaintiffs' implausible

5  theories about the supposed health harms of sugar or the notion that consumers misunderstand the

6  difference between juice and raw fruits and vegetables. SAC ¶¶ 37, 88. This same argument was

7  also dispensed with in *Cleveland*. There, as here, plaintiffs alleged that non-label public statements

8  by Campbell purportedly supported plaintiffs' characterization of the product as deceptively

9  labeled as healthful. *Cleveland*, 2022 WL 17835514, at *4 (citing *Cleveland* Am. Compl. ¶ 33).

10  This Court summarily rejected these allegations as having no bearing on the issue of plausibility.

11  *Id.* ("Plaintiffs' remarks about Campbell's alleged marketing goals…are equally inapposite to

12  plausibility."); *accord Becerra*, 945 F.3d at 1230 (rejecting plaintiffs' attempted reliance on

13  historical advertising campaigns as "irrelevant to [plaintiff's] claims").

14       Although the irrelevance of Plaintiffs' allegations on this point are reason alone to reject

15  them, there is an additional and independent basis in law to do so: None of the named Plaintiffs

16  claim to have relied on *any* of this non-label information. Compare SAC ¶¶ 49–55 (citing non-label

17  statements) *with* ¶¶ 103, 106, 109 (Plaintiffs alleging reliance exclusively on labels themselves).

18  Reliance is an essential element of Plaintiffs' UCL, FAL, and CLRA claims. *Takano v. Proctor &*

19  *Gamble Co.*, 2018 WL 5304817, at *3 (E.D. Cal. Oct. 24, 2018) ("Plaintiffs' claims under the UCL,

20  FAL, or CLRA must demonstrate actual reliance."). Courts therefore consistently dismiss claims

21  tied to statements on websites or in other marketing materials that the plaintiffs did not rely on. *Id.*

22  ("Plaintiffs could not have actually relied on any website statements and lack standing under the

23  UCL, FAL, and CLRA to challenge the statements[.]") (dismissing UCL, FAL, and CLRA claims

24  to the extent premised on websites that plaintiffs did not rely on); *Altes v. Bulletproof 360, Inc.*,

25

26      [1] The SAC's assertion that the FDA has engaged in public education efforts regarding the
Nutrition Facts Panel is equally irrelevant to the issue of whether the V8 Juices' labels are

27  misleading. SAC ¶¶ 89–90; *Cleveland*, 2022 WL 17835514, at *2. Regardless, it is a settled point
of law in the Ninth Circuit that when a product's labels are otherwise non-deceptive, as is true here,

28  then a "reasonable consumer" is charged with reviewing and taking into account all information on
that food label. *Moore*, 4 F.4th at 881.

2020 WL 1062878, at *3 (C.D. Cal. Mar. 5, 2020) ("As [plaintiff] does not claim that she saw the Website Claims prior to her purchase, she could not have been induced into purchasing [defendant's product] by the Website Claims."). The same result is compelled here.

*Third*, the statement "A Healthy & Delicious Plant-Powered Blend of Vegetables & Fruit" now challenged by Plaintiffs is non-deceptive for the same reasons that the previously challenged "Boost Your Morning Nutrition" statement is non-deceptive. It is a truthful description of the product that could not mislead a reasonable consumer as to the V8 Juices' sugar content or whether they are nutritionally identical to raw fruits and vegetables. *See* First Dismissal Order at 1–2; Second Dismissal Order at 2–3.

The entire theory behind Plaintiffs' prior challenge to the "Boost Your Morning Nutrition" claim was that the claim communicated to consumers that the product is "healthy." Compl. ¶¶ 1, 76, 78, 155; FAC ¶¶ 33, 117. Thus, this Court's prior analysis as to that "Boost Your Morning Nutrition" statement applies with equal force to the claim "A Healthy & Delicious Plant-Powered Blend of Vegetables & Fruit." This claim appears on the labels of V8 Juices that otherwise have the "actual sugar content plainly stated," along with "disclosures of beneficial vitamins and nutrient content." First Dismissal Order at 1; *see also* SAC Appendix 2. Moreover, as explained in Section V.(B), *infra*, Campbell is expressly permitted to have the V8 Juices to carry this "Healthy" statement under FDA regulations governing the use of that term. *See* 21 C.F.R. § 101.65(d)(2)(F) (setting nutrient thresholds for "healthy" product). So, the regulatorily-compliant reference to "healthy" is a truthful statement that could not possibly mislead a "reasonable consumer." *Moore*, 4 F.4th at 885 (labeling that complies with FDA regulations for the contested elements of that label is non-misleading). And, as before, the USDA and FDA also substantively recognize that fruit and vegetable juices are part of a healthy diet. Fruit and vegetable juices are food sources the USDA and FDA have determined, based on nutritional science, provide positive nutrients and whose consumption should be encouraged. *See* Second Mot. to Dismiss at 3, 10–11.

Nor is the phrase "A Healthy & Delicious Plant-Powered Blend of Vegetables & Fruit," reasonably interpreted as meaning that V8 Juices are "as healthy as whole fruit." Second Dismissal Order at 2. The "Plant-Powered Blend" statement appears on the same panel as the statement "Made

With The Juices Of 3Lbs. Of Vegetables And Fruit Per Bottle," thus making it abundantly clear that the product is *juice*, not whole fruit. *See* SAC Appendix 2. Moreover, the law on this point is clear that "no reasonable" consumer believes that two plainly distinct foods nonetheless have identical nutritional profiles. *See Painter v. Blue Diamond Growers*, 757 Fed.App'x 517, 519 (9th Cir. 2018) ("[T]wo distinct food products necessarily have different nutritional profiles…[I]t is not plausible that a reasonable consumer would 'assume that two distinct products have the same nutritional content.'") (affirming Rule 12 dismissal under "reasonable consumer" standard). And, as before, the labels of V8 Juices bearing this claim also have "disclosures of the juice's vitamin and nutrient content, which plainly state exactly the nutritional values the consumer would get." Second Dismissal Order at 2; *accord Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (full label considered under "reasonable consumer" standard); *Truxel v. General Mills Sales, Inc.*, 2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019) (same and as applied to information disclosed regarding products' nutrients).

For all these reasons, the SAC once again fails to satisfy the "reasonable consumer" standard. This necessarily means that the warranty claims fail as well. *Yu*, 2020 WL 5910071, at *7; *Truxel*, 2019 WL 3940956, at *4 (warranty claims do not survive where consumer protection claims premised on same conduct fail to satisfy "reasonable consumer" standard).

## B.     Plaintiffs' Claims are Expressly Preempted.

While the "reasonable consumer" defense disposes of Plaintiffs' claims in full, the SAC is also expressly preempted under the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. § 343-1, et seq. As noted in the Fist Dismissal Order, the Ninth Circuit held in *Clark v. Perfect Bar LLC*, 816 F. App'x 141 (9th Cir. 2020), that claims challenging the healthfulness of foods because of their sugar content are preempted, particularly where those foods otherwise qualify as "healthy" under FDA regulatory standards. *See* First Dismissal Order at 2 (citing *Clark*). All of the V8 Juices challenged in this case qualify as "healthy" under federal standards because of their Vitamin A and C content, and because they do not contain any of the nutrients that the FDA deems disqualifying to make a "healthy" claim. *See* Campbell First Mot. to Dismiss at 12–13 (citing 21 C.F.R. § 101.65(d) ("healthy" nutrient content claims)). Sugar is not among the disqualifying nutrients for

a healthy claim. *See* 59 Fed. Reg. 24,232, 24,244 (May 10, 1994). So, under *Clark*, these regulations preempt state laws that challenge labeling communicating a "healthy" message simply because the product contains sugar. 816 F. App'x at 143 ("[a]llowing a claim of misbranding under California law based on misleading sugar level content would 'indirectly establish' a sugar labeling requirement 'that is not identical to the federal requirements,' a result foreclosed by our precedent.").

As was true in prior complaints, the SAC continues to repeatedly allege that V8 Juices' labels communicate to consumers that the products are "healthy." SAC ¶ 103, 106, 109 (all plaintiffs alleging deception based on challenged "labeling claims and images that were intended to appeal to consumers interested in healthy products"); *id.* ¶ 2 ("Campbell represents on their labels that the Juice Blends are both (1) healthy and (2) healthy substitutes for whole fruit and vegetables"); *id.* ¶¶ 19, 20 22, 36, 56–68 (similar allegations that V8 Juices misleadingly portrayed as "healthy"). And the SAC likewise still premises its assertion that the V8 Juices are "unhealthy" on the presence of the naturally occurring sugars that are present in the products. *Id.* ¶¶ 31–34 (sugar content in juice renders it unhealthy).

Indeed, the SAC only strengthens Campbell's preemption argument because Plaintiffs now affirmatively challenge not one but *two* claims containing the word "healthy"—the product name "Healthy Greens" and the claim "A Healthy & Delicious Plant-Powered Blend of Vegetables & Fruit"—thus bringing the SAC squarely under the preemptive ambit of the FDA's "healthy" regulations that allow such claims on products like the V8 Juices. 21 C.F.R. § 101.65(d)(2)(F). And because these claims are made "in connection with" statements regarding the nutrients Vitamins A and C, that usage fully satisfies the requirements of the underlying regulation. *See* 21 C.F.R. § 101.60(c); *accord Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1073 (N.D. Cal. 2017).

The SAC is therefore fully preempted under *Clark*, because Plaintiffs' claims would "indirectly establish" a sugar labeling requirement not identical to federal law. 816 F. App'x at 142–43. What's more, the preemption analysis dovetails with the substantive healthfulness of the V8 Juices, because they qualify as foods that USDA Dietary Guidelines confirm are part of "healthy eating patterns." *See* Campbell Second Mot. to Dismiss at 9–10; *see also* 7 U.S.C. §§ 5301(2);

5341(a)(1)(2) (Dietary Guidelines provide "general public with nutritional advice," are intended to "improve[] the nutritional status" of consumers' diets, and are based on "scientific knowledge [that is] current.").

Campbell anticipates that Plaintiffs will argue, as they did in the prior round of dismissal briefing, that the V8 Juices purportedly violate the FDA's Fortification Policy and therefore are not permitted to make a nutrient content claim. *See* SAC ¶¶ 41–46 (alleging non-compliance with Fortification Policy) and Pls. Opp. Campbell Second Mot. to Dismiss at 11–12 (Dkt. No. 50) (Aug. 16, 2022) (arguing that alleged non-compliance prohibits nutrient content claims). But as Campbell previously explained, the Fortification Policy does not apply to the V8 Juices at all, as its applicability is limited to "fresh produce; meat, poultry, or fish products; sugars; or snack foods such as candies and carbonated beverages." 21 C.F.R. § 104.20(a). The V8 Juices do not fall into any of these categories, and so the SAC's reliance on the Fortification Policy is inapposite. The relevant caselaw is consistent with this limitation as well, as the Fortification Policy has been applied to products like alcoholic beverages and sports drinks. *See Marek v. Molson Coors Beverage Co.*, 580 F.Supp.3d 848, 859–59 (N.D. Cal. 2022) (alcohol); *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) (sports drink).

## C.   Plaintiffs Are Not Entitled To Their Requested Equitable Remedies.

The only appropriate result now given Plaintiffs' repeated pleading failures is dismissal of the SAC in full and with prejudice. It remains true, however, that Plaintiffs' requests for equitable remedies are still legally defective.

***First***, Plaintiffs lack Article III standing for injunctive relief, because they have not plausibly alleged threatened future harm. *See Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1113 (9th Cir. 2017), *as amended on denial of reh'g en banc*, 889 F.3d 956, 969–70 (9th Cir. 2018). Plaintiffs' claims remained premised on a theory that V8 Juices are inherently unhealthy because they are juice. SAC ¶¶ 29–36. Plaintiffs' allegation of future purchase intent if the products are "reformulated," SAC ¶ 122, is thus implausible given that their stated position is that juice is harmful. There is no rational injunction that this Court could order that would satisfy Plaintiffs in light of these allegations. Juice is juice; it is not raw fruit. Nothing about changing the labels, or

3:21-CV-09458-JD
MOTION TO DISMISS SECOND
AMENDED COMPLAINT

removing the contested claims, could change those physiological facts. The SAC's allegations of future purchase intent are, therefore, implausible and cannot support Article III standing for injunctive relief. *Yu*, 2019 WL 2515919, at *5 (no standing to seek injunctive relief when "Plaintiff has not alleged that he would purchase the products-in-question if the representation 'Natural' or 'All Natural Ingredients' was removed").

**Second**, Plaintiffs' request for equitable monetary relief still fails, because they do not allege they lack an adequate remedy under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). Plaintiffs seek restitution under the UCL, FAL, and the CLRA, *i.e.*, the money they claim they overpaid for the V8 Juices. SAC ¶¶ 149, 159, 168, 176; *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *8 (N.D. Cal. Dec. 15, 2014). That duplicates their request for compensatory relief under the CLRA and for breach of warranties. SAC ¶¶ 168, 175, 176. The request for equitable monetary relief is therefore barred. *Werdebaugh*, 2014 WL 7148923, at *8; *Johnson v. Trumpet Behav. Health, LLC*, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022).

### D.     The SAC Should be Dismissed with Prejudice.

The Court's Second Dismissal Order appropriately noted that given prior permitted amendments, the SAC would be Plaintiffs' "final opportunity" to state a plausible claim. Second Dismissal Order at 3. Plaintiffs have still failed to do so, such that further amendment would be futile and dismissal in full and with prejudice is now warranted. *Cattaneo v. Am. Airlines, Inc.*, 2015 WL 5610017, at *3 (N.D. Cal. Sept. 24, 2015) (dismissal with prejudice proper where amendment futile); *Brodsky v. Apple, Inc.*, 445 F.Supp.3d 110, 122 (N.D. Cal. 2020) (dismissal with prejudice proper where or a plaintiff "repeated[ly] fail[s] to cure deficiencies by amendments previously allowed"); *Collette v. Wyeth Pharm.*, 2020 WL 3414701, at *3 (Donato, J.) (N.D. Cal. Jun. 22, 2020) (dismissing with prejudice where prior opportunities to amend did not cure complaint's deficiencies).

### VI.     CONCLUSION

For the foregoing reasons, Campbell respectfully requests this Court dismiss Plaintiffs' SAC with prejudice.

DATED:  February 3, 2023           **PERKINS COIE LLP**

By: */s/ Charles C. Sipos*

David T. Biderman, Bar No. 101577
DBiderman@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone:     415.344.7000
Facsimile:     415.344.7050

Charles C. Sipos, *Pro Hac Vice*
CSipos@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone:     206.359.8000
Facsimile:     206.359.9000

Attorneys for Defendant Campbell
Soup Company